THE MIDLAND PARK COAL AND LUMBER CO., INC., A COR-
PORATION OF NEW JERSEY, PROSECUTOR, v. MAIT-
LAND B. TERHUNE, INSPECTOR OF BUILDINGS OF
THE VILLAGE OF RIDGEWOOD, THE BOARD OF AD-
JUSTMENT OF THE VILLAGE OF RIDGEWOOD, AND
THE BOARD OF COMMISSIONERS OF THE VILLAGE
OF RIDGEWOOD, DEFENDANTS.

Argued May 6, 1947—Decided January 23, 1948.

Before Justices Donges, Colie and Eastwood.

For the prosecutor, *Chauncey A. Plyley*.

For the defendants, *William E. Reinhardt*.

The opinion of the court was delivered by

Eastwood, J. *Certiorari* was allowed to review the denial
by the Board of Adjustment of the Village of Ridgewood of
prosecutor's application for a special exception to the village
zoning ordinance, so as to permit use by prosecutor of certain
of its lands for the storage of lumber, building materials and
coal, in connection with a similar business now conducted
by it on an adjoining tract located partly in the Village of
Ridgewood and partly in the Borough of Midland Park. A
review of the action of the Board of Commissioners of the
Village of Ridgewood denying prosecutor's application for

permission to erect a fence encircling the premises in question, eight feet in height, topped by barbed wire, is also sought in these proceedings. The matter is submitted on an agreed stipulation of facts and photographic exhibits of the *locus* tending to reveal the factual conditions and circumstances of the same.

The prosecutor has operated a lumber and storage yard for coal and building materials for a considerable number of years. Its property is bounded northerly by Lake Avenue in the Borough of Midland Park, having a frontage of approximately 340 feet on the southerly side thereof. The property then extends in a southerly direction crossing the boundary line between the Borough of Midland Park and the Village of Ridgewood of approximately the same width, into Ridgewood, with a depth of approximately 125 feet on the easterly side and somewhat over 200 feet on the westerly side. At its southerly terminus prosecutor's yard abuts and adjoins the premises in question. The existing lumber and coal yard was used as such at the time of the adoption of the zoning ordinance in 1931 and has been continued as a non-conforming use down to the present time. The existing lumber and coal yard and the tract now sought by prosecutor to be used for like purposes are located in a single dwelling zone as defined in the zoning ordinance of the defendant village.

The premises in question are designated as Block 116, Lot 6 on the village tax map and consists of a strip of vacant, unimproved land which was formerly part of the right of way of the Paterson and State Line Traction Company, over which trolley tracks were formerly laid and used. The Traction Company discontinued operations prior to the zoning ordinance of 1931 and the premises in question were acquired by prosecutor from the Public Service Co-ordinated Transport on May 21st, 1943. The present applications were filed for permission to extend the non-conforming use of its previously owned property to the premises in question.

The lot comprising the subject-matter of the applications before us is roughly in the shape of an inverted "L." It fronts on its easterly end for a distance of 54.50 feet on the west side of Lakeview Drive, which extends southerly from

Lake Avenue in Midland Park. The lot then runs in a general westerly direction for approximately 385 feet abutting on its northerly side the present lumber and coal yard of prosecutor. The lot then turns abruptly and runs in a southerly direction about 540 feet at a varying width of about 50 feet at the northerly end to 40 feet at its southerly end. Adjoining this, the longer side of the "L" on the west, is the right of way of the New York, Susquehanna and Western Railroad. On the easterly side it abuts the rear of properties on which are erected single dwellings. Single dwellings are also erected on the southerly boundary of the shorter side of the "L." The *locus* is thus seen to be an irregularly shaped tract of land with a street frontage of 54.50 feet on Lakeview Drive, located in an area restricted to single dwelling residences.

The zoning ordinance of 1931 in so far as it is material to the matter at bar provides, *inter alia,* as follows:

"Section 2. Classes of Zones.

"For the purpose of this Ordinance, the Village of Ridgewood is hereby divided into five classes of districts or zones, as follows:

"Single Dwelling Zones.

"Double Dwelling Zones.

"Apartment Zones.

"Local Business Zones.

"General Business Zones."

"Section 4. General Provisions.

"(b) Future Uses Construction and Changes.

"No lot hereafter may be used and no building or part thereof hereafter may be erected, constructed, reconstructed, moved, repaired, extended, converted, altered, maintained or used, except in conformity with the provisions of this ordinance."

The zoning ordinance under review is attacked by the prosecutor on the grounds that the same is unreasonable, unconstitutional and violative of both the state and federal constitutions in so far as said zoning ordinance attempts to prohibit the use of said lands for the purpose of the storage of lumber, building material and coal. We have carefully

reviewed the facts pertinent to the issue and the authorities applicable thereto and conclude that the zoning ordinance under review in no wise violates the provisions of *R. S.* 40:55–30, 32 which controls the matter before us.

It is urged by the prosecutor that the only effect sought by its application is the extension of its presently existing non-conforming use to the premises in question, and that such extension and enlargement may legally be made since the premises in question abut and adjoin its existing lumber and coal yard. It is further said that the lot in question is not adaptable to any other use except that of business and trade. This contention cannot prevail. We held in *DeVito* v. *Pearsall,* 115 *N. J. L.* 323; 180 *Atl. Rep.* 202, that although a non-conforming use may be continued, it cannot be enlarged or extended. Citing *Conaway* v. *Atlantic City,* 107 *N. J. L.* 404; 154 *Atl. Rep.* 6. Mr. Justice Case (now Chief Justice), speaking for the Supreme Court in *DeVito* v. *Pearsall,* said:

"The care with which the legislature limited the application of the principle of non-conforming use and the restrictive language with which it authorized restoration and repair are, we think, cogent manifestations of an intent opposite to the wide expansion for which argument is now made."

We think the foregoing expression particularly apt to the case at bar.

It is said, however, that the application for special exception to the zoning ordinance in so far as the use of the premises in question is concerned contemplates a continued user of the tract formerly owned by the Paterson and State Line Traction Company, in itself a non-conforming use. It is urged that such non-conforming use may now be altered so as to permit prosecutor to use the lot for the storage of lumber, building materials and coal. This contention is untenable. The prospective use represents a substantial change from one non-conforming use to another non-conforming use and is condemned by the holding in *Berry* v. *Recorder's Court of West Orange,* 124 *N. J. L.* 385; 11 *Atl. Rep.* (2d) 743, opinion by Mr. Justice Heher. In that case, lands devoted to farming, with the incidental use of horses in furtherance

of that purpose, and constituting a non-conforming use were sought to be used for conducting a riding academy or stable including the hiring of saddle horses for use on the adjacent highways and bridle paths. Here, too, we hold that the proposed change from the use of the tract for transportation purposes to one for use as a storage yard is a substantial change that cannot find approbation under our cases. See, also, *Lane* v. *Bigelow et al.*, 135 *N. J. L.* 195; 50 *Atl. Rep.* (*2d*) 638.

We are asked to set aside the action of the Board of Adjustment in denying prosecutor's application on the ground that the zoning ordinance attempts to control the use of vacant land and is, therefore, unconstitutional and without statutory authority. In *Burmore* v. *Champion*, 124 *N. J. L.* 548; 12 *Atl. Rep.* (*2d*) 713, a property owner sought a license to park thirty cars on the rear 80 feet of its lot on which there were two buildings. It was argued that under a zoning law, similar to that before us, the power of the municipality was limited to the regulation of buildings and structures, and that the municipality had no authority to deny the application for the parking lot license, upon the ground that the zoning law prohibited the business of parking which merely contemplated the use of vacant land. Mr. Justice Perskie in dismissing this contention said:

"Notwithstanding the various uses made of the lot and buildings thereon at the time of the passage of the zoning ordinance, as pointed out in *Burmore Co. et al.* v. *Smith et al.*, *supra*, the fact, as stipulated, is that appellant and respondents regarded appellant's lot and buildings thereon as one lot. The law so regards it. *Edwards* v. *Derrickson*, 28 *N. J. L.* 39, 45. Upon that premise, it seems to us to be utterly illogical to say that the portion of the same lot on which there are two buildings is subject to the zoning ordinance and the remaining portion is not."

Here, too, we conclude prosecutor contemplates the user of the tract in question in conjunction with its already existing yard and buildings. In fact, it is stipulated that the contemplated use is identical. The argument that there is no constitutional or statutory authority to regulate by zoning,

the use of vacant land, has been disposed of adversely to prosecutor in *Yoemans et al.* v. *Hillsborough Township et al.,* 135 *N. J. L.* 599; 54 *Atl. Rep.* (2d) 202, opinion by Mr. Justice Colie.

Prosecutor contends that the provisions of the zoning ordinance under consideration are unreasonable with regard to the character of the district and its peculiar suitability for particular uses, with a view for conserving the value of property and encouraging the most appropriate use of the land. Citing *Gabrielson* v. *Glen Ridge,* 13 *N. J. Mis. R.* 142. A reading of the cited authority will reveal that the factual circumstances therein involved are not in any wise similar to those prevailing in the matter before us. In *Gabrielson* v. *Glen Ridge,* it appeared that in the immediate vicinity of the *locus* there was a gasoline station, an automobile repair shop, stores, a saloon, apartment buildings, office buildings and several factories. Here, the adjoining property is largely developed and all for residential purposes. The residences immediately adjoining in Ridgewood are substantial and well-kept homes, which would be materially affected by the expansion of prosecutor's yard for the storage of lumber, coal and general building materials. As previously stated the area is and has been in the single dwelling zone since the enactment of the zoning ordinance in 1931. There is no parallelism between the situation in *Gabrielson* v. *Glen Ridge, supra,* and that in issue here.

It is pertinent to observe that prosecutor acquired the additional parcel of land in 1943, twelve years after the adoption of the zoning ordinance. Prosecutor acquired this additional piece of ground with full knowledge of the restrictions of the zoning ordinance and it seems obvious its application to extend its activities into the forbidden territory is in effect an attempt to circumvent the prohibition imposed by the ordinance.

Directing our attention to prosecutor's application for permission to erect an eight foot fence topped with barbed wire around the lot in question, we conclude that the action of the defendant Board of Commissioners in denying same was legally justifiable. Section 50 of the building ordinance in effect provides:

"Fences—No fence shall be erected, or maintained over four (4) feet in height. This does not prohibit, however, the erection of fences exceeding (4) feet in height, provided that the plans of such a fence and the purposes for which the same is to be used shall have been approved by the Commissioners; and, if approved, the same shall not be used for any other purpose than that granted by the permit. 'No fence shall be used as the side of a shed.' "

Statutory authority to regulate the size, height and dimensions of any fence between lands of adjoining owners or adjacent thereto is granted to municipalities under *R. S.* 40:48–1, *subdiv.* 29. Keeping in mind the character of the neighborhood and the purposes sought to be served by the erection of the fence, we see nothing in the ordinance or the refusal of the Commissioners that is arbitrary, unreasonable or oppressive. The denial was proper.

We have considered all of the other points raised by the prosecutor in support of its contentions and find them to be without merit.

The writ is dismissed, with costs.

DONGES, J. (Dissenting.) I am unable to agree with the holding of the majority in this case on the question of the reasonableness of the restriction of the zoning ordinance upon the use of the land in question and the existence of an undue hardship in the strict enforcement of the ordinance.

The factual situation is set out in the majority opinion. The principles of law to be applied have been stated in the cases. "The statute provides that regulation of use of property shall be made with reasonable consideration to the character of the district and its peculiar suitability for particular uses, with a view of conserving the value of property and encouraging the most appropriate use of the land." *Gabrielson* v. *Glen Ridge,* 13 *N. J. Mis. R.* 142. "The governmental power to interfere by zoning regulations with the general rights of the land owner by restricting the character of his use, is not unlimited, and other questions aside, such restriction cannot be imposed if it does not bear a substantial relation to the public health, safety, morals or general welfare." *Nectow* v. *Cambridge,* 277 *U. S.* 183.

A consideration of the physical situation reveals that the tract which prosecutor seeks to use for lumber yard purposes would be entirely unsuitable for the construction of residences. There is but a 54.5 feet street frontage and insufficient width for the construction of a new street. It extends back in a westerly direction from Lakeview Drive, at approximately the same width, 54.5 feet, for a distance of about 385 feet to the railroad tracks. The longer side of the "L" shaped lot runs along the railroad tracks, at a width of approximately 50 feet, for a distance of 540 feet. There could be constructed upon this large tract of land but one single family residence. To require that it be devoted to such use and no other would be to deprive the owner of its use and would certainly not be devoting the land to its most suitable use. "It is also to be remembered that the use of property is one of the essential attributes of ownership. Ownership without use is fatuous. True, every owner holds his property subject to the implied condition that it will not be used for the injury of others and also subject to a degree of municipal control in the interest of the common good." *Frank J. Durkin Lumber Co.* v. *Fitzsimmons,* 106 *N. J. L.* 183. The ordinary and lawful use of property is not authorized by the statute to be prohibited because it may be repugnant to the sentiments or desires of a particular class residing in the immediate neighborhood but only because such use is detrimental to the interests of the public at large. An examination of the map of the *locus in quo* discloses that the lot in question abuts residential properties facing Lakeview Drive only at the extreme rear thereof, at distances varying from 150 to 300 feet from the street line. The smaller side of the "L" also runs along the side of two properties facing Lakeview Drive at the point where it has its frontage on that street. By and large there is no very close proximity of the lot to dwelling houses in the zone and for almost half of its boundary the lot abuts the present lumber yard and the right of way of the railroad. There is no showing that a lumber yard is *per se* dangerous or that it is a fire hazard, in view of the fact that such establishments are permitted in a general business zone. *Frank J. Durkin Lumber Co.* v. *Fitzsimmons, supra.*

I am of the opinion that, in view of the existing conditions, the non-conforming use of the adjacent lands, the peculiar location, size and shape of the tract in question, and all the surrounding circumstances, the imposition of the restriction was unreasonable and arbitrary, and worked an undue hardship upon the prosecutor. The action of the board should be set aside. I think likewise that the denial of permission to erect a fence about the lands was arbitrary and without warrant, and not justified by any considerations of public health, safety or general welfare.