Evans *v.* City of Little Rock.

4-9916                                                           253 S. W. 2d 347

Opinion delivered December 1, 1952.

Rehearing denied January 12, 1953.

*Dorothy J. Stager, Edward E. Stocker* and *Cooper Jacoway,* for appellant.

*O. D. Longstreth, Jr.,* and *Dave E. Witt,* for appellee.

*Catlett & Henderson* and *Frank H. Cox,* for interveners.

GEORGE ROSE SMITH, J. This is a continuation of the zoning controversy that was before us in *City of Little Rock* v. *Evans,* 213 Ark. 522, 212 S. W. 2d 28. The appellant owns a combined foundry and heating-equipment factory situated on the south side of Fifteenth Street in a residential district in Little Rock. This plant, which is the only commercial establishment in the neighborhood, occupies less than a quarter of a city block. The two lots now in dispute lie just across the street from the appellant's plant, in the middle of the block on the north side of Fifteenth Street. These two lots have been zoned for residential use only ever since the city adopted its zoning ordinance in 1937. Evans bought these lots in 1946 and obtained permission from the city to use them for storage purposes for ninety days. Under that temporary permit he erected a small building on the lots and devoted them to commercial use. When the permit expired Evans was directed to remove this building, but instead he brought suit to enjoin the city from enforcing the ordinance. In the earlier case we held the suit to be premature, as Evans had not exhausted his administrative remedies.

Thereafter Evans pursued without success the administrative procedure for having the lots reclassified as business property. His application was disapproved by the City Planning Commission, the Board of Adjustment, and the city council. Evans then filed this suit, but the chancellor denied relief.

Before the courts may reject the findings of the municipal authorities it must be shown that their action was unreasonable and arbitrary. *McKinney* v. *City of Little Rock,* 201 Ark. 618, 146 S. W. 2d 167. In his insistence that this burden of proof has been met Evans presents a two-fold argument.

First, it is contended that the property in question is so ill-suited to residential use that its restriction to

that classification amounts to confiscation. This issue presented to the chancellor a question of fact upon which the testimony is in the sharpest dispute. In contending that the lots are without substantial value as a residential site the appellant relies upon the fact that his factory is directly across the street and the fact that the houses next to the lots in dispute have been so placed that their backyards abut these lots on all sides except that fronting on Fifteenth Street. We attach little importance to the latter fact, since in any residential district there is the possibility that a lot in the middle of the block may be confronted by backyards on three sides. This circumstance results not from the impact of the zoning ordinance but from the fact that the owners of corner lots may face their dwellings upon either street. We are not willing to say that the owner of a lot so situated is entitled by the constitution to use it for industrial purposes, to the detriment of his neighbors.

Nor is it shown that the presence of the appellant's factory has destroyed the value of neighboring property for residential use. Several witnesses testified for each side as experts in the field of real estate values. It cannot be said that the evidence given by the witnesses called by the plaintiff outweighs that presented by the defendant and the intervening property owners. On the contrary, the history of the neighborhood decidedly supports the view that Evans' lots have not lost their worth as homesites. Evans began his commercial activities upon a small scale and has expanded them over a period of years, but the existence of his plant has not deterred others from building homes all around it. Much of this construction took place after the plant had attained its present size. One of the plaintiff's expert witnesses admits that in the earlier litigation he testified that certain property, then vacant, immediately west of the factory was not suitable for residential use. Yet in the interval between the two trials houses were built upon this land and it is now entirely occupied. Another of the plaintiff's witnesses stated on direct examination that the lots in question would be "an ideal spot for anyone that works in the foundry to build a home there." There

is other evidence indicating that the lots are now worth as much as they were when Evans bought them in 1946. We think the weight of the testimony shows pretty well beyond question that the proximity of the appellant's relatively small plant has not substantially impaired the value of these lots as homesites.

Second, Evans insists that since his factory was lawfully established he has the right to extend the business area to the land across the street. In this connection he relies upon our cases holding that property upon the periphery of an established business district cannot be confined to residential use if its value for that purpose is altogether disproportionate to its potential worth as commercial property. *Little Rock* v. *Pfeifer,* 169 Ark. 1027, 277 S. W. 883; *Little Rock* v. *Sun Bldg. & Dev. Co.,* 199 Ark. 333, 134 S. W. 2d 582; *Little Rock* v. *Bentley,* 204 Ark. 727, 165 S. W. 2d 890; *Little Rock* v. *Joyner,* 212 Ark. 508, 206 S. W. 2d 446.

Owing to the difference in the facts the principle of those decisions does not extend to the case at bar. In each of the cited cases the commercial area was in fact a district, comprising several blocks devoted to business use. This is typical of proper zoning, which has been defined as the regulation *by districts* of building development and the uses of property. Bettman, ''Constitutionality of Zoning,'' 37 Harv. L. Rev. 834. Such a district is often a community center that has a natural tendency to grow as the surrounding residential area becomes more densely populated, with a correspondingly increased need for neighborhood commercial facilities.

That is not the situation in the case at bar. Evans' factory is an island in a vicinity that is otherwise wholly residential. The record shows without much question that the lots in controversy have little inherent appeal to prospective purchasers of commercial property. These lots are especially desirable for business use only to Evans, the reason being that their location is convenient to his factory. Louis Tarlowski, a witness having long experience in the field of city planning, testified that the

conversion of this property to commercial use "would constitute spot zoning of the worst type." For us to uphold the appellant's contention would mean that any person who gradually expands an isolated business originally confined to his own homestead has a constitutional right to acquire the property next door and to convert it to industrial use. We are not convinced that the law requires us to go that far.

Affirmed.

MILLWEE, J., not participating; HOLT, J., dissents.