818 P.2d 704

Franz ROTTER, South Grand Canyon Hospitality, Inc., an Arizona Corporation, Plaintiffs–Appellees Cross Appellants,

v.

COCONINO COUNTY, Coconino County Planning and Zoning Commission, and William L. Towler, Director of the Coconino County Department of Community Development, Defendants–Appellants Cross Appellees.

No. CV–90–0327–PR.

Supreme Court of Arizona, En Banc.

Oct. 3, 1991.

270

Perry, Pierson & Kolsrud by Russell A. Kolsrud, Mark D. Svejda, Phoenix, for plaintiffs-appellees cross appellants.

John Verkamp, Coconino County Atty. by Terence C. Hance, Flagstaff, for defendants-appellants cross appellees.

## OPINION

FELDMAN, Vice Chief Justice.

Coconino County petitioned for review from the court of appeals' opinion allowing Franz Rotter and his corporation, South Grand Canyon Hospitality, Inc. (collectively Rotter), to expand a nonconforming use in violation of a county zoning ordinance onto an adjacent parcel first acquired by Rotter after passage of an ordinance forbidding that use. *Rotter v. Coconino County*, 167 Ariz. 198, 805 P.2d 1019 (Ct.App.1990). We granted review pursuant to Rule 23, Ariz. R.Civ.App.P., 17B A.R.S., and have jurisdiction under article 6, § 5(3) of the Arizona Constitution and A.R.S. § 12–120.24.

## FACTS AND PROCEDURAL HISTORY

Rotter owns and operates a hotel on a leased parcel of land in Tusayan, Arizona, an unincorporated town within Coconino County. Rotter built the hotel in 1980 on parcel 11G. At that time, parcel 11G and the surrounding parcels (10B and 10D), which were not owned or used by Rotter, were all zoned to permit hotels. In 1981, Coconino County (the County) adopted a comprehensive zoning plan that restricted all three parcels to multi-family residential use. Thus, under the 1981 ordinance, as well as the 1987 ordinance that superseded it, hotels are not a permitted use. Rotter, of course, continued to operate his hotel as a legal, preexisting nonconforming use. *See* A.R.S. § 11–830(A). In 1987, he purchased portions of parcels 10B and 10D, now designated as parcel 10G. Parcel 10G is adjacent to parcel 11, but is in a different zoning district.[1]

In December 1987, Rotter applied to the Coconino County Planning and Zoning Commission (the Commission) for a permit to expand his nonconforming hotel use by one hundred percent of its area onto parcel

---

1. The County ordinance defines "zone" as "a classification established by this Ordinance which limits or permits various and specific uses." Ordinance § 8. This definition equates to a "zoning district," as defined by the Arizona statutes. *See* A.R.S. § 11–801(6) ("zoning district" means any portion of a county in which the same set of zoning regulations applies).

10G. The Commission denied the permit because, under the County's zoning ordinance (the Ordinance), a nonconforming use may not expand onto a "site which it did not occupy at the time it became a nonconforming use." Ordinance § 17.3(B).

Rotter then filed a special action in superior court, seeking an order requiring the County to issue the building permit. The superior court agreed with Rotter that the expansion was authorized by A.R.S. § 11–830(B), which provides:

> A nonconforming business use within a district may expand if such expansion does not exceed one hundred per cent of the area of the original business.

The court held that, in view of this statute, the County had no authority to "legislate against expansion of a business across differently zoned property lines," even though the expansion would extend a prohibited use onto a parcel acquired after the zoning ordinance was enacted. Order, Aug. 17, 1988. The court subsequently issued an order requiring the County to grant a building permit to Rotter in accordance with his expansion plans.

On appeal, a majority of the court of appeals accorded A.R.S. § 11–830(B) its broadest construction, finding that, as a county rather than a city zoning provision, "the policy favoring the eventual elimination of nonconforming uses is inapplicable to the interpretation of A.R.S. § 11–830(B)." *Rotter*, 167 Ariz. at 204, 805 P.2d at 1025. The court interpreted A.R.S. § 11–830(B) as a statute "by which the state legislature *guaranteed* expansion of nonconforming business uses." *Id.* at 203, 805 P.2d at 1024 (emphasis added). It therefore concluded that A.R.S. § 11–830(B) accorded the property owner a right to expand free of county restriction, regardless of whether the expansion would extend across zoning district lines or upon a parcel not previously burdened by the use. *Id.* at 205, 805 P.2d at 1026. To the extent that the Ordinance conflicted with this right, it was invalid. *Id.* at 202–03, 805 P.2d at 1023–24. Dissenting, Judge Gerber read the statute as granting a "limited *permission*" to expand, "discretionary to

the zoning commission." *Id.* at 208, 805 P.2d at 1029 (emphasis in original). The dissent based this construction on two grounds. First, it found that Arizona's public policy favors the eventual elimination of nonconforming uses. *Id.* at 207, 805 P.2d at 1028 (citing *Gannett Outdoor Co. v. City of Mesa*, 159 Ariz. 459, 461, 768 P.2d 191, 192 (Ct.App.1989)). Second, the fact that the legislature amended the original language "shall have the right to expansion" to read "may expand" indicated its intent not to confer an absolute right to expand the nonconformity. *Id.* at 208, 805 P.2d at 1029.

We granted review to determine whether a county may prohibit expansion of a nonconforming use onto an adjacent parcel not previously burdened by the use and acquired after passage of the ordinance barring that use.

## DISCUSSION

### A. Relevant Law of Vested Nonconforming Uses

A nonconforming land use is commonly defined as a lawful use maintained after the effective date of a zoning ordinance prohibiting such use in the applicable district. *See* 1 R. ANDERSON, AMERICAN LAW OF ZONING 3d § 6.01, at 446 and 447 n. 2 (1986). The doctrine of vested nonconforming uses is based on the reluctance of courts to apply zoning ordinances retroactively, thus destroying vested property rights. 4 A. RATHKOPF, THE LAW OF ZONING AND PLANNING § 51.01, at 51–4 (1987 & 1990 Supp.); *see Watanabe v. City of Phoenix*, 140 Ariz. 575, 577, 683 P.2d 1177, 1179 (Ct.App.1984) (principle of nonconforming use is based upon the injustice and doubtful constitutionality of compelling immediate discontinuance of the use). Any ordinance that eliminates nonconforming uses solely by virtue of its enactment is generally held unconstitutional as a taking of property without due process of law. *O'Connor v. City of Moscow*, 69 Idaho 37, 202 P.2d 401, 403–04 (1949); *Bergford v. Clackamas County*, 15 Or. App. 362, 515 P.2d 1345, 1347 (1973). A nonconforming use, however, is a source of

vested rights only if it was in *actual* existence and use before the effective date of the ordinance. *See* RATHKOPF, *supra* § 51.01; Young, *The Regulation and Removal of Nonconforming Uses,* 12 W. RESERVE L. REV. 681, 686 (1961); *see also Sherman–Colonial Realty Corp. v. Goldsmith,* 155 Conn. 175, 230 A.2d 568, 572 (1967) (it is not enough that the use be contemplated, rather the property must be "so utilized as to be 'irrevocably committed' to that use.") (quoting *Town of Lebanon v. Woods,* 153 Conn. 182, 215 A.2d 112, 120 (1965)).

■ Further, the vested right to continue the nonconforming use runs with the land and is not personal to the owner of the use at the time the right vests. RATHKOPF, *supra* § 51.05. The owner is thus limited to the original premises and may not assert any "vested right" to remove the nonconforming use to another parcel of land that was not used for this purpose prior to the effective date of the ordinance. *See, e.g., Jensen's v. Town of Plainville,* 146 Conn. 311, 150 A.2d 297, 299 (1959) (plaintiff's right to operate nonconforming use extends only to original tract and number of trailers existing at the time it became a nonconforming use).

■ Although nonconforming uses are constitutionally protected from the retroactive effect of zoning regulations, such uses are not favored by the law, primarily because they detract from the effectiveness of comprehensive land use regulation, often resulting in lower property values and blight. *County Council v. E.L. Gardner, Inc.,* 293 Md. 259, 443 A.2d 114, 118 (1982). Because of these negative effects, nonconforming uses should be eliminated or reduced to conformity as quickly as possible within the limits of fairness and justice. *Beerwort v. Zoning Bd. of Appeals,* 144 Conn. 731, 137 A.2d 756 (1958); *County Council,* 443 A.2d at 119; *New London Land Use Assoc. v. Zoning Bd. of Adjustment,* 130 N.H. 510, 543 A.2d 1385, 1389 (1988).

With these relevant general principles in mind, we turn to examine the validity of the Ordinance as applied to Rotter's expansion request.

**B. The Relationship of the Arizona Statutes to Local Ordinance**

In most jurisdictions, county and city governments do not have inherent power to enact zoning ordinances. That power is derived from enabling acts passed by state legislatures. The authority to deal with a nonconforming use is thus broadened or narrowed by the enabling act. *See generally* ANDERSON, *supra* § 6.03. In Arizona, the provisions of A.R.S. §§ 11–801 through 11–832 grant counties authority to adopt planning and zoning regulations, affirmatively requiring each county zoning commission to formulate and adopt a comprehensive long-term plan for development of the area within its jurisdiction. A.R.S. § 11–821(A). The county plan must "provide for zoning" and must "show the zoning districts designated as appropriate for various classes of residential, business and industrial uses." § 11–821(B).

■ Coconino County's zoning ordinance was developed pursuant to the power granted by A.R.S. § 11–801 *et seq. See* Ordinance No. 81–1 (adopted by Coconino County Board of Supervisors, Aug. 3, 1981). In general, a zoning ordinance will be upheld if it is a reasonable exercise of the power to zone for the purposes of public health, safety, and welfare. *Cardon Oil Co. v. City of Phoenix,* 122 Ariz. 102, 593 P.2d 656 (1979). The ordinance must, however, operate within the statutory grant of authority to zone. An ordinance is invalid if it conflicts with the state statute delegating the local authority power to act. *See City of Scottsdale v. Scottsdale Assoc. Merchants, Inc.,* 120 Ariz. 4, 5, 583 P.2d 891, 892 (1978).

■ In this case, therefore, the dispositive question is whether § 17.3(B) of the Ordinance, barring expansion of a nonconforming use onto "a site which it did not occupy at the time it became a non-conforming use," conflicts with A.R.S. § 11–830, the statute governing nonconforming uses. In determining the answer to this question, we start from the premise that

statutes and ordinances that are in apparent conflict must be construed, if possible, to give full force and effect to each. *Fendler v. Texaco Oil Co.*, 17 Ariz.App. 565, 570, 499 P.2d 179, 184 (1972) (courts will avoid finding a city ordinance in conflict with a state statute if a reasonable interpretation of the ordinance will avoid such a conflict).

## C. Related Provisions of the Ordinance and the Arizona Statutes

The Ordinance sets forth the regulations governing nonconforming uses in Section 17, which regulates the expansion, alteration, and restoration of nonconforming uses with the goal that "[e]ventually, certain classes of non-conforming uses, nonconforming structures, and certain non-conforming signs are to be eliminated or altered to conform." Ordinance § 17.0. This goal accords with the overall policy underlying regulation of nonconforming uses. *See Gannett Outdoor Co. v. City of Mesa*, 159 Ariz. 459, 461, 768 P.2d 191, 193 (Ct.App.1989) ("[p]ublic policy favors the eventual elimination of nonconforming uses. This is implicit in § 9–462.02 and throughout the entire statutory scheme empowering Arizona cities and towns to employ zoning regulations for land use planning.").

■ The Ordinance prohibits any regulation that would require the termination or removal, or preclude the maintenance or repair of a nonconforming use as it existed at the effective date of the zoning regulation. Ordinance § 17.11(A). The Ordinance thus complies with A.R.S. § 11–830(A), which restricts a county's authority to regulate nonconforming uses by providing that no ordinance shall "[a]ffect *existing* uses of property or the right to its continued use or the reasonable repair or

alteration thereof for the purpose for which used at the time the ordinance affecting the property takes effect." (Emphasis added.) The Ordinance and subsection (A) of the statute deal with continuation of the use separately from expansion, thus implying that the vested right to continue the use does not include a right to change or expand the use.

■ The Arizona legislature has, of course, contemplated limited expansion of a nonconforming use by providing that a "nonconforming business use within a district *may* expand if such expansion does not exceed one hundred per cent of the area of the original business." A.R.S. § 11–830(B) (emphasis added). The Ordinance is facially consistent with A.R.S. § 11–830(B) in that it provides for expansion of a nonconforming use by up to one hundred percent of its original floor area, provided that such expansion is accomplished pursuant to a conditional use permit and in accordance with the setback and sideyard regulations of the zone in which it is located.[2] Ordinance § 17.11(C). However, in a separate provision, the Ordinance bars expansion onto a site not previously used for the nonconforming use. Section 17.3(B) provides in relevant part:

> No non-conforming use shall be enlarged or extended in such a way as to occupy any part of ... another ... site which it did not occupy at the time it became a non-conforming use, or in such a way as to displace any conforming use occupying a structure or site, except as permitted in this Section.[3]

"Site" is defined as "a parcel of land, subdivided or unsubdivided, occupied or to be occupied by a use or structure." Ordinance § 8.

■ Under the facts of this case, therefore, we must determine whether the Ari-

2. The full text of § 17.11(C) reads as follows:
   In any zone, subject to the granting of a conditional use permit, a non-conforming business use may expand if such expansion does not exceed one hundred percent (100%) of the floor area of the original business; provided, however, that such expansion shall conform to the standards for front yard, side yards, rear yard, height of structures, dis-

tances between structures or setbacks from residentially zoned properties prescribed in the regulations for the zone in which the original business is located (A.R.S. § 11–830).

3. Ordinance § 17.6 details limited situations in which an otherwise prohibited expansion may be permitted, none of which apply to the facts of this case.

zona legislature intended A.R.S. § 11–830(B) to grant an absolute right to expand to after-acquired adjoining parcels not previously subject to the nonconforming use, or whether such expansion is subject to county regulatory authority.

## D. Interpretation of A.R.S. § 11–830(B)

### 1. *The Nature of the Right to Expand*

Arguably, the language "a nonconforming business use *may* expand" is ambiguous as to whether the right is "mandatory," *e.g.*, not subject to county regulation, or "permissive." *See Castregon v. Huerta*, 119 Ariz. 343, 345, 580 P.2d 1197, 1199 (1978) (use of the word "may" is interpreted as permissive or mandatory according to the usual principles of statutory construction). Lacking any clear expression of legislative intent, we examine the legislative history of the statute. *See City of Mesa v. Killingsworth*, 96 Ariz. 290, 394 P.2d 410 (1964).

The county zoning scheme originated with the County Planning and Zoning Act of 1949, first codified at §§ 17–1901 through 17–1918. *See* Ariz.Code Ann. 1939 ed. (1952 Cum.Supp.). Section 17–1916 provided that "[a] nonconforming business use within a district *shall have the right to expansion* providing the same does not exceed 100% of the area of the original business." (Emphasis added.) That section was later amended to its present form and codified as A.R.S. § 11–830(B) in the extensive 1956 revisions to the Code. *See* A.R.S. § 11–830(B) (1956).

While the legislature did not expressly comment on the intent behind the changes, we note that the amended statute differs in three important respects from its predecessor: (1) it changes the language from "shall" to "may," (2) it deletes the words "right to expansion" altogether, and (3) it separates the provision regarding continuance from that dealing with expansion. Although, as noted, the word "may" has occasionally been interpreted as "mandatory," we are reluctant to accord that construction where the legislature has clearly amended a statute's mandatory language. As the court of appeals noted in another case in which a statute's language was amended from "shall" to "may" without specific expression of legislative intent, "when the legislature amends a statute we must presume they intended to change existing law rather than perform a futile act." *Lake Havasu City v. Mohave County*, 138 Ariz. 552, 558, 675 P.2d 1371, 1377 (1983). Taken as a whole, the amendments to the statute are quite substantive in nature and indicate that the legislature intended to distinguish between the *absolute* right of a nonconforming business use to continue in its present state and the *limited* right of a nonconforming use to reasonable expansion. Thus, we believe the legislature contemplated that counties would have at least minimal regulatory authority to ensure that expansion of nonconforming uses would be reasonable.[4]

The court of appeals acknowledged that counties have some regulatory authority, but apparently concluded that the one hundred percent area limitation was the *sole* permissible restriction on expansion, though the statute does not plainly state this. *Rotter*, 167 Ariz. at 205, 805 P.2d at 1026; *cf.* A.R.S. § 11–830(A)(2) (legislature specifically provided that no ordinance shall "[p]revent, restrict or *otherwise regulate* the use or occupation of land [for stated purposes]." (emphasis added)).

---

**4.** The court of appeals majority believed that even if the language was discretionary, it gave the nonconforming use a right to expand in the business owner's discretion, rather than in the discretion of the zoning authorities. *Rotter*, 167 Ariz. at 205, 805 P.2d at 1026. This reading of the statute is unsupportable. Even under the earlier version of the statute, which appears to provide a more definitive right to expand, a nonconforming use would have had discretion to expand. The statute did not *require* such expansion. Further, as enabling legislation, the statute governs the authority of the local government, not the business user. Two leading treatises on zoning law interpret § 11–830(B) as authorizing *local authorities* to restrict expansion of nonconforming uses. *See* ANDERSON, *supra* § 6.45, at 582 and n. 37, and § 6.03, at 452 and n. 37; 6 P. ROHAN, ZONING & LAND USE CONTROLS § 41.01[4], at 41–12 and n. 27 (1991).

In a prior portion of the opinion, however, the court correctly realized that A.R.S. § 11–830(B) does not give a nonconforming use an *absolute right* to expand up to one hundred percent free of *any* regulation by the County. For example, the court acknowledged that nonconforming uses are "subject to reasonable regulations under the police power to protect the public health, safety, welfare or morals." *Rotter,* 167 Ariz. at 202, 805 P.2d at 1023 (quoting *Watanabe,* 140 Ariz. at 577, 683 P.2d at 1179). In addition, a nonconforming use cannot be accorded greater rights than a conforming use in the same district. *Jenkintown Towing Serv. v. Zoning Hearing Bd.,* 67 Pa.Cmwlth. 183, 446 A.2d 716, 719 (1982). Thus, expansion of the nonconforming use is subject to the same sideyard and setback requirements that govern all structures in the district.[5]

Thus, expansion of nonconforming uses is clearly subject to *some* county regulation aside from the one hundred percent area limitation. We must therefore determine whether A.R.S. § 11–830(B) authorizes expansion onto a parcel first acquired after passage of the ordinance and not previously subject to that use, or whether a county may prohibit such an expansion in the reasonable exercise of its regulatory authority. Because A.R.S. § 11–830(B) is silent on the issue, we must construe the statute to determine whether this is a permissible regulation.

### 2. *Expansion to Parcels Not Previously Subject to the Use*

■ Generally, the right to expand a nonconforming use exists only if granted by law and is limited by any restrictions therein.[6] *See, e.g., Albert v. Board of Standards & Appeals,* 89 A.D.2d 960, 454 N.Y.S.2d 108, 110 (1982); *Watts v. City of Helena,* 151 Mont. 138, 439 P.2d 767, 768 (1968); *County Council,* 443 A.2d at 119. Further, most jurisdictions hold that statutory provisions regarding nonconforming uses are to be read narrowly to promote the policy to restrict and eventually eliminate nonconforming uses. *See* ANDERSON, *supra* § 6.07, at 464–66 and n. 96; *see, e.g., Goodwin v. Kansas City,* 244 Kan. 28, 766 P.2d 177, 182 (1988) (law is strictly construed against nonconforming uses as a matter of public policy); *Wyatt v. Board of Adjustment,* 622 P.2d 85, 86 (Colo.App.1980) (zoning ordinances should not be given an interpretation that would permit an indefinite continuation of a nonconforming use). Even Pennsylvania, which has interpreted its constitution to impart a right of "natural expansion," holds that ordinances dealing with nonconforming uses must be strictly construed to further the policy to closely restrict and eventually eliminate nonconforming uses. *Hanna v. Board of Adjustment,* 408 Pa. 306, 183 A.2d 539, 543 (1962).

■ In Arizona, the statutes governing cities expressly provide that the eventual termination of nonconforming uses serves a public purpose. A.R.S. § 9–462.02. Thus, the statute accords "with the underlying spirit of zoning, which is to restrict nonconforming uses, and public policy requires that [such] statutes be strictly construed [against the nonconforming use]." *Circle K Corp. v. City of Mesa,* 166 Ariz. 464, 467, 803 P.2d 457, 460 (Ct.App.1990) (citing *Gannett Outdoor Co.,* 159 Ariz. at

---

**5.** The court of appeals considered the conditional use permit requirement in its discussion of the validity of the Ordinance. *Rotter,* 167 Ariz. at 202, 805 P.2d at 1023. Rotter's proposed expansion was denied, however, not because it failed to meet the criteria for a conditional use permit but because it would expand a nonconforming use onto a parcel not previously subject to this use. Thus, the validity of the conditional use permit requirement is not an issue before us and is not addressed by this court.

**6.** This is the rule in the overwhelming majority of American jurisdictions. Pennsylvania has ju-

dicially recognized a constitutional right of nonconforming uses to "natural expansion," but this is an exceptional rule and has never been followed by Arizona. *See* 4A N. WILLIAMS, AMERICAN LAND PLANNING LAW § 113.08, at 168 (1986) (noting that "the law in Pennsylvania is completely different from the law any place else. While all the other states have directed considerable effort at preventing the expansion of nonconforming uses, Pennsylvania has actually granted the nonconforming use a constitutional right to expand.").

461, 768 P.2d at 193). Although the statutes governing counties contain no similar statement of policy, we believe that the regulation of nonconforming uses by cities and counties rests on the same basis.[7] Section 9–462.02, which became effective January 1, 1974, illustrates the modern Arizona policy promoting stricter regulation of nonconforming uses to achieve the eventual goal of termination. Further, the 1956 amendments to § 11–830(B) suggest that the legislature intended to balance the rights of an existing business to reasonable expansion against the county's duty to ensure planned growth and development of communities. Thus, statutory provisions regarding the expansion or elimination of nonconforming uses should be read narrowly to promote the legislature's policy goals.

The court of appeals found that "Arizona has never embraced the rule of construing provisions permitting nonconforming uses strictly against the nonconforming user." *Rotter*, 167 Ariz. at 203, 805 P.2d at 1024. The court relied on the following paragraph from *Pima County v. Cardi*, 123 Ariz. 424, 427, 600 P.2d 37, 40 (Ct.App. 1979):

> [A]s a general rule, because land use regulations are in derogation of common law property rights, they are strictly construed to favor the property owner. *Kubby v. Hammond*, [68 Ariz. 17, 198 P.2d 134 (1948)]. Although many jurisdictions except from this general rule regulations governing existing uses and construe them to restrict existing uses ... Arizona has not adopted this rule. *Phoenix City Council v. Canyon Ford,*

*Inc.,* [12 Ariz.App. 595, 473 P.2d 797 (1970)].

As the court in *Cardi* indicated, the general rule that zoning ordinances should be strictly construed in favor of the property owner has been widely disregarded with respect to nonconforming uses. *See Albert*, 454 N.Y.S.2d at 110 ("[w]hile it is customary for a zoning ordinance to be strictly construed in favor of the property owner ... there are countervailing considerations when the ordinance limits extension of nonconforming uses, because such uses detract from the effectiveness of the comprehensive zoning plan" (citations omitted)); *see also* ANDERSON, *supra*, at 465–66.

Significantly, the courts in both *Kubby v. Hammond*, 68 Ariz. 17, 198 P.2d 134 (1948), and *Phoenix City Council v. Canyon Ford, Inc.*, 12 Ariz.App. 595, 473 P.2d 797 (1970), adopted the rule of strict construction in favor of the property owner in considering whether there was a valid preexisting nonconforming use that had an *absolute* entitlement to *continue*. Neither case dealt with a nonconforming use's *limited* statutory right to *expand*. The question of expansion directly raises the possibility that the policy to eventually eliminate the nonconforming use will be frustrated. Thus, to the extent that *Cardi* implies that Arizona strictly construes statutes regulating the *expansion* or *change* of nonconforming uses in favor of the property owner, it is unsupported and is disapproved.

Statutes and ordinances dealing with the expansion or change of nonconforming uses must be strictly construed to further

---

**7.** The court of appeals believed that the legislature adopted this policy with regard to the city but not county zoning statutes. *Rotter*, 167 Ariz. at 204, 805 P.2d at 1025. While it is true that the county statutes do not contain a provision identical to A.R.S. § 9–462.02, which expressly states that the "elimination of nonconforming uses in a zoned district is for a public purpose," the two sets of statutes are virtually identical in their broad grants of authority to zone by district and establish permissible uses therein. *See, e.g.*, A.R.S. § 11–821 (mandating adoption of comprehensive plan that districts according to use); A.R.S. § 11–808 (granting broad enforcement powers). Thus, absent any legislative expression to the contrary, we will not read into the county statutes a policy diametrically opposed to that set forth in the city statutes and articulated by each of our sister states. We believe that the city and county nonconforming use statutes rest on the same policy basis. *See State ex rel. Larson v. Farley*, 106 Ariz. 119, 122, 471 P.2d 731, 734 (1970) (statutes relating to the same subject should be construed together because legislature's intent must be ascertained from the entire system of related statutes. This rule applies even when statutes were enacted at different times and are found in different chapters of the revised statutes).

the legislature's policy goals.[8] Justice Struckmeyer, dissenting on a different issue in *Mueller v. City of Phoenix*, ably foreshadowed the modern approach to dealing with the expansion and change of nonconforming uses:

> [T]he spirit underlying zoning is to restrict rather than to increase nonconforming uses. To that end it has been held by the most respected courts in the country that nonconforming uses are to be eliminated as rapidly as possible. They are not to be rebuilt or renewed and statutes permitting nonconforming uses are to be strictly construed against the nonconforming user.

102 Ariz. 575, 585, 435 P.2d 472, 482 (1967) (citations omitted); *see also Circle K Corp.*, 166 Ariz. at 467, 803 P.2d at 460; *County Council*, 443 A.2d at 119 (local ordinances regarding nonconforming uses must be strictly construed in order to effectuate the purpose of eliminating nonconforming uses).

In accordance with the doctrine of vested uses and the restrictive policy that governs interpretation of nonconforming use statutes, most American jurisdictions hold that a nonconforming use is limited to the site or area that was nonconforming when the ordinance was enacted. *See, e.g., Norton Shores v. Carr*, 81 Mich.App. 715, 265 N.W.2d 802, 805 (1978). Thus, a nonconforming use generally may not be extended to encompass land or property that was not in use at the time the zoning ordinance was enacted. *See Olinger v. Collins*, 470 So.2d 1183, 1186 (Ala.1985); *Chizum v. Elkhart County Plan Comm'n*, 147 Ind.App. 691, 263 N.E.2d 654 (1970); *Township of Commerce v. Rayberg*, 5 Mich.App. 554, 147 N.W.2d 453, 454–55 (1967); *see also* Annotation, *Zoning: Changes, Repairs, or Replacements in Continuation of Nonconforming Use*, 87 A.L.R.2d 4, 31 (1963).

*A fortiori*, the overwhelming majority view is that the establishment of a nonconforming use on one lot does not authorize the owner to expand the use onto the owner's adjoining lots, particularly when those lots were acquired after passage of the ordinance barring the use.[9] *See* ANDERSON, *supra* § 6.51, at 601 and accompanying notes; Annotation, *Change in Area or Location of Nonconforming Use as Violation of Zoning Ordinance*, 56 A.L.R.4th 769, 787–89 (1987); *see, e.g., Evans v. Little Rock*, 221 Ark. 252, 253 S.W.2d 347, 348–49 (1952); *Jensen's*, 150 A.2d at 299; *Minquadale Civic Ass'n v. Kline*, 42 Del.Ch. 378, 212 A.2d 811, 815–16 (1965); *City of Revere v. Rowe Contracting Co.*, 362 Mass. 884, 289 N.E.2d 830, 831 (1972); *Midland Park Coal & Lumber Co. v. Terhune*, 136 N.J.L. 442, 56 A.2d 717 (1948), *aff'd*, 137 N.J.L. 603, 61 A.2d 76 (1948); *Amon v. City of Rahway*, 117 N.J.L. 589, 190 A. 506, 508 (1937); *Weber v.

---

**8.** In Arizona, city ordinances have consistently been construed to further the legislature's zoning goals in cases dealing with expansion and change of nonconforming uses. *See, e.g., Overson v. Phoenix Bd. of Adjustment*, 101 Ariz. 525, 421 P.2d 882 (1966) (zoning ordinance amended to permit expansion of nonconforming uses did not confer an automatic right to expansion, rather expansion was subject to meeting requirements for use permit); *Blake v. City of Phoenix*, 157 Ariz. 93, 754 P.2d 1368 (Ct.App. 1988) (decision of zoning board to deny use permit to expand nonconforming use was upheld because the change in nature of use from wholesale to retail business constituted an impermissible change in use).

**9.** Rotter cites several cases that allow expansion to adjacent parcels. These cases involve unique factual situations that are easily distinguished from the case before us and are therefore not relevant to our analysis. *See, e.g., Philadelphia Art Alliance v. Zoning Bd. of Adjustment*, 377 Pa. 144, 104 A.2d 492 (1954) (property owner allowed to extend an existing nonconforming parking lot to a contiguous lot acquired prior to the zoning ordinance and by the same deed as the parking lot); *Gulf, C & SF Railway v. White*, 281 S.W.2d 441 (Tex.App.1955) (railroad allowed to extend its rails in violation of a local ordinance where state statutes and constitution provided this right); *Royal Baking Co. v. Oklahoma City*, 182 Okl. 45, 75 P.2d 1105 (1938) (bakery that had purchased adjoining lots prior to passage of zoning ordinance was permitted to use lots because surrounding area had turned into retail district and not residential area, as earlier contemplated); *Liberty Lumber v. City of Tacoma*, 142 Wash. 377, 253 P. 122 (1927) (owner could construct sheds on adjacent, after-acquired parcels because this was incident to an existing business and was not the establishment of a new business within the meaning of an ordinance that prohibited only the latter without consent of the neighbors).

*Pieretti,* 72 N.J.Super. 184, 178 A.2d 92 (1962), *aff'd,* 77 N.J.Super. 423, 186 A.2d 702 (1962); *Struyk v. Samuel Braen's Sons,* 17 N.J.Super. 1, 85 A.2d 279, 281 (1951), *aff'd,* 9 N.J. 294, 88 A.2d 201 (1952); *Rodrigues v. Rosenthal,* 112 A.D.2d 1000, 492 N.Y.S.2d 809, 811 (1985); *Town of Aurora v. Kranz,* 103 A.D.2d 1022, 478 N.Y.S.2d 218 (1984), *aff'd,* 63 N.Y.2d 996, 483 N.Y.S.2d 1012, 473 N.E.2d 262 (1984); *Davis v. Miller,* 163 Ohio St. 91, 126 N.E.2d 49, 51 (1955); *Humphreys v. Stuart Realty Corp.,* 364 Pa. 616, 73 A.2d 407, 409 (1950); *Bachman v. Zoning Hearing Bd.,* 82 Pa.Cmwlth. 51, 474 A.2d 406 (1984), *aff'd,* 508 Pa. 180, 494 A.2d 1102 (1985); *Schaffer v. Zoning Hearing Bd.,* 32 Pa. Cmwlth. 261, 378 A.2d 1054, 1056 (1977); *DeWitt v. Brattleboro Zoning Bd. of Adjustment,* 128 Vt. 313, 262 A.2d 472, 476–77 (1970); *Town of Yorkville v. Fonk,* 3 Wis.2d 371, 88 N.W.2d 319, 322–23 (1958), *appeal dismissed,* 358 U.S. 58, 79 S.Ct. 110, 3 L.Ed.2d 48 (1958).

In defense of his position, Rotter points out that the Arizona statute, which allows one hundred percent expansion, is much more liberal than the ordinances upon which the holdings in the above cases were based. We are not aware of any jurisdiction that has a statute like Arizona's. We note, however, that even in Pennsylvania, which holds that there is a *constitutional right* to "natural expansion," expansion is not "as of right" but requires a variance based on a showing of unusual hardship to the owner whenever the expansion is to extend over land not previously occupied by that use. *Appeal of Rizzone,* 88 Pa. Cmwlth. 502, 490 A.2d 26 (1985). This is also the case when the expansion would extend to property acquired after the enactment of the zoning ordinance establishing that use as nonconforming. *Jenkintown Towing Serv.,* 446 A.2d at 718. In *Humphreys,* the Pennsylvania Supreme Court considered whether a nonconforming business could expand to an adjoining property under an ordinance that provided for expansions of up to twenty-five percent of the original area. 73 A.2d 407. The court held that "[w]hile a nonconforming use may be extended in scope as the business

increases in magnitude it clearly may not be so extended over ground not occupied at the time of the passage of the zoning ordinance." *Id.* at 409.

We are not aware of *any* jurisdiction in the country that guarantees a right to expand a nonconforming use onto parcels never subject to the use and first acquired *after* passage of the ordinance barring the use. To accord the Arizona statute such a broad reading would establish a precedent counter to the law of all of our sister states and impinge on our legislature's policy goals. We would, of course, not hesitate to reach such a result if the statute or legislative history explicitly provided for this. However, neither the statute nor its legislative history expresses such an intent. Nor are we willing to give the statute such an interpretation when, in so doing, we would reach a result contrary to that contemplated by the language of the amendments to § 11–830.

Further, such an interpretation of the statute would contravene sensible policy goals. Restrictions against expansion to other parcels prevent the owner of the nonconforming use from acquiring additional conforming parcels of land and converting them to a nonconforming use, in contravention of the zone's general plan. An absolute right of expansion to such newly acquired property could lead to perpetual existence of the nonconforming use, violating the essential principle that nonconforming uses should be reduced to conformity as soon as is consistent with fairness and due process of law. Such unrestricted expansion would frustrate the objectives of the local zoning authority, particularly where a large preexisting use seeks to expand by one hundred percent, and lead to inconsistent "spot" zoning within distinct zoning districts. As the Arkansas Supreme Court noted in *Evans,* expansion as of right onto the owner's after-acquired lots "would mean that any person who gradually expands an isolated business originally confined to his own homestead has a ... right to acquire the property next door and convert it to industrial use. We are not convinced that the law requires us to go that

far." 253 S.W.2d at 349. In addition, the nonconforming business use would be given a favored economic position, holding a neighborhood monopoly to the exclusion of any potential competitors. *See Hay v. Board of Adjustment*, 37 N.J.Super. 461, 117 A.2d 650, 652 (1955).

It is true, of course, that expansion of a nonconforming use on the original parcel implicates many of the same problems. Here, however, the theory of vested rights within the *original parcel*, premised on due process concerns, supports the right of the nonconforming business to continue and adjust to new circumstances. That same rationale is not available where the expansion would extend to after-acquired parcels of land that were never subject to the nonconforming use. A person who "purchases land with knowledge, actual or constructive, of zoning ordinances which are in effect at the time of purchase is said to have created for himself whatever hardship such restrictions entail." *DeWitt*, 262 A.2d at 477.

Yet another factor militates against the construction that *Rotter* advances. While the court of appeals was careful to limit its holding to expansion onto the owner's *adjacent* parcels, whether within the same zoning district or not, such a broad right to expand would *necessarily* include the right to expand to *any* parcel. There is no statutory basis to distinguish expansion to adjacent parcels from expansion to noncontiguous parcels. The only valid distinction is between the original parcel, on which the vested nonconforming use exists, and other parcels never burdened by the use.

In light of the foregoing, we hold that Ordinance § 17.3(B), as applied to *Rotter* in this case, does not conflict with A.R.S. § 11–830(B). The county may prohibit expansions that would extend the nonconforming use onto after-acquired sites that were not part of the nonconforming use prior to the effective date of the ordinance.

## CONCLUSION

The Ordinance complies with the statute by allowing one hundred percent expansion of a nonconforming business use. Ordinance § 17.3(B), as applied in this case, permissibly precludes expansion of a nonconforming use onto an after-acquired parcel not previously used for this purpose. Thus, Rotter did not have an absolute right to expand his nonconforming use onto the adjacent parcel, and the Commission did not act unlawfully in finding that such expansion would violate the Ordinance.

The court of appeals' opinion is vacated. The judgment is reversed, and the case is remanded with instruction to enter judgment in favor of the County.

GORDON, C.J., and CAMERON, MOELLER and CORCORAN, JJ., concur.