Richard L. SMITH, Appellant,

v.

BOARD OF ADJUSTMENT OF the CITY OF CEDAR RAPIDS, IOWA, Appellee.

No. 89–939.

Supreme Court of Iowa.

Sept. 19, 1990.

James W. Affeldt of Elderkin & Pirnie, Cedar Rapids, for appellant.

Mohammad H. Sheronick, Cedar Rapids, for appellee.

Considered by McGIVERIN, C.J., and HARRIS, LARSON, SCHULTZ and CARTER, JJ.

CARTER, Justice.

This is an appeal by a property owner challenging an order upholding the refusal of the Cedar Rapids Board of Adjustment to legitimatize a nonconforming use of property under a local zoning ordinance. Plaintiff challenged the board's action in a certiorari proceeding brought under Iowa Code section 414.15 (1989). The district court upheld the board. So do we.

This dispute involves a tiny lot with a street frontage of only twenty-one feet and a depth of only thirty-five feet. The lot is located in an R-3 residential zoning district in the City of Cedar Rapids. The small building on this lot was used almost continuously for commercial purposes from 1890 until January 9, 1984. Until sometime in 1980, this commercial usage had been consistent with existing zoning ordinances. In 1980, however, the property was rezoned as an R-3 residential district. At this time, the property was being used as a hairstyl-ing salon, a use not permitted in an R-3 zoning district.

After the 1980 rezoning of the property, it continued to be used as a hairstyling salon by virtue of the nonconforming use exemption contained in Cedar Rapids Municipal Code section 32.15 (1979). On January 9, 1984, plaintiff leased the property to Haldy's, Inc., for a period of two years. Haldy's, Inc., continued to operate the hairstyling salon located on the property until sometime in April of 1985. At this time, the building on the property was abandoned by the tenant although the rent for the term of the lease continued to be paid through January 9, 1986.

Sometime in November 1986, persons living in the vicinity of this lot noticed a "for sale" sign on the property which indicated it was available for commercial purposes. These persons contacted local zoning authorities and advised them that the property had been vacant since April of 1985. They inquired as to whether, as a result of this inactivity, the nonconforming use exemption had been extinguished by operation of law.

In following up on these requests, the zoning administrator concluded that the exemption had been extinguished by nonuser. This determination was based on the following language contained in Cedar Rapids Municipal Code section 32.15(g):

If the nonconforming use of a building, structure, or premises is discontinued or vacated for a continuous period of twelve months, it shall not be renewed and any subsequent use of the building, structure, or premises shall conform to the use regulations of the district in which such building, structure, or premises is located.

On November 25, 1986, the zoning administrator wrote to plaintiff advising him as follows:

Dear Mr. Smith:

It has come to the attention of the Zoning Section of the City Building Department that the property at the address is being advertised "For Sale" as commercial property.

Please be advised the zoning in this district is R–3. This property was vacated approximately April 1, 1985. Subsection 32.15(g) of the current Zoning Ordinance states: "[ordinance quoted in full]."

You are hereby notified this property can only be used as a single-family dwelling.... This use is no longer legal nonconforming and can only be residential use.

Plaintiff is a real estate broker and had listed this property with his own firm as being usable for commercial purposes. It also appeared on the multiple listing service. The property was not usable for residential purposes in the R–3 district as a result of area requirements. When plaintiff received the November 25 letter concerning loss of the nonconforming use exemption, he took the property off the market. He did not communicate with zoning officials about this matter, however, until sometime in January 1988.

On January 12, 1988, plaintiff requested that zoning administrator, Madonna Moore (the author of the November 25 letter), issue a certificate showing a legal nonconforming use exemption existed for this lot. That request was denied. Ms. Moore issued two separate denial letters, one dated January 12, 1988, and the other dated January 19, 1988. Each of these denial letters referred to Cedar Rapids Municipal Code section 32.15(g) and recited that the nonconforming use of the building had been discontinued for more than twelve months.

On January 22, 1988, plaintiff filed an appeal to the board of adjustment. The appeal purported to be taken from the January 12, 1988, denial letter refusing to issue a zoning certificate. A copy of the January 12 denial letter was attached to the appeal papers. The grounds for appeal were stated as follows:

1. This building was built in 1890 as a business building. It has never been used for anything other than a place of business.

2. This building was leased January 1984 to January 1986 and during the period of the lease, the business closed even though they honored the lease payments.

3. We were unable to get a new tenant in the property due to the neighborhood.

4. We listed the property for sale or lease and in November 1986 we received a letter from the Zoning Department that we could no longer use or sell the property for commercial use as it was designed and built.

5. We feel this is not fair! This building is not adequate or large enough for a single-family dwelling and the building codes would not allow an addition. Even if they would allow an addition, costs of such an addition would prohibit the expansion.

6. We are paying taxes, insurance, maintenance and $150.00 a month Principal and Interest payments and on a property we purchased as a business building and you have eliminated any chance for us to lease or sell this building.

The current loan balance is approximately $18,000.00 on this property.

We feel this is an unjust ruling and has left us with the burden which we cannot afford. Please allow this property to be used as the commercial building as it was designed. It would also be better for the neighborhood than having this building sit empty.

Plaintiff appeared before a regularly scheduled meeting of the Cedar Rapids Board of Adjustment on February 8, 1988. The board after considering his appeal denied the relief which he requested.

On March 4, 1988, plaintiff brought a certiorari action as authorized by Iowa Code section 414.15 (1989). He alleged that the zoning administrator had erred in determining the time in which the nonconforming use exemption would expire as a result of discontinuance of that use. In denying plaintiff any relief from the action of the board of adjustment, the district court concluded that the nonconforming use exemption had been lost as a result of the nonuse of the property for commercial purposes from April 1985 until the time of the board of adjustment hearing on February 8, 1988. The court also concluded that,

under the provisions of Cedar Rapids Municipal Code section 32.17, variances may only be granted with respect to setback, area, width, depth, height, offstreet parking, or screening restrictions and not as to use restrictions.[1]

In framing the first issue on this appeal, plaintiff urges that the validity of the nonconforming use exemption for his property must be determined as of November 25, 1986. He bases this contention on the fact that he could thereafter make no commercial use of the property without violating the express directive of the zoning administrator's letter. As a companion argument, plaintiff asserts that the nonconforming use exemption had not been lost at the time of the November 25, 1986, letter. He contends that a property owner who has enjoyed a nonconforming use exemption and does not intend to abandon it cannot be deprived of that right by the nonuse of a tenant. In support of this contention, plaintiff cites and relies on *Dubitzky v. Liquor Control Commission,* 160 Conn. 120, 273 A.2d 876 (1970).

The board argues that under the terms of the ordinance it is the actual use being made of the property which governs rather than the intention of the owner. Accordingly, the board urges, the entire period of inactivity must be considered, including the portion which occurred while the property was under the control of plaintiff's tenant. The board further argues that plaintiff's argument does not excuse the thirteen months of nonuse which occurred between the time the lease expired and the board of adjustment hearing in February 1988.

▆ In reviewing the authorities cited by the parties, we are persuaded by the views expressed in *State ex rel. Peterson v. Burt,* 42 Wis.2d 284, 166 N.W.2d 207 (1969), that, in dealing with the perpetuation of nonconforming uses, it is permissible for city councils to draft ordinances which dispense with subjective intent.

Such ordinances may effectively extinguish nonconforming uses based solely on discontinuance of that use for a specified period of time. *See id.; Canada's Tavern v. Town of Glen Echo,* 260 Md. 206, 271 A.2d 664 (1970). Cedar Rapids Municipal Code section 32.15 appears to be such an ordinance.

▆ We qualify the foregoing conclusion by expressing our belief that even under ordinances which dispense with subjective intent there is some room to perpetuate a nonconforming use in situations where the period of discontinuance takes place under circumstances beyond the property owner's control. This view is recognized in *City of Minot v. Fisher,* 212 N.W.2d 837, 841 (N.D. 1973). Whether a tenant's control of leased premises is a circumstance beyond the landlord's control for purposes of this qualification is a close question. We need not answer it in this case.

▆ We must conclude, as did the district court, that, even if we accept plaintiff's theory that the nonconforming use exemption did not expire until one year after the termination of the lease, the exemption would still have expired more than a year before the board of adjustment hearing. We believe the board of adjustment could and did take into account the absence of a commercial use of the property for the period between Ms. Moore's November 25, 1986, letter and the date of the hearing on plaintiff's zoning appeal.

We agree with plaintiff that as a practical matter the November 25, 1986, letter impeded him from placing a commercial use on the property. If plaintiff was candid about the zoning problem which that letter created, selling or leasing the property for commercial purposes would have been difficult. The fact remains, however, that it is speculative whether a commercial tenant or buyer could have been found

---

**1.** This conclusion finds support in the provisions of subsections (D) and (E) of § 32.17(b)(2). Subsection (E)(1) of that ordinance provides, in part:

E. *No variance shall be granted which would:*

*1. Permit a use which is not allowed as a permitted use by the provisions of this Ordinance in the district in which a property is located,* nor any use expressly or by implication prohibited therefrom. . . .

(Emphasis added.)

under any circumstances during the forty-five days of the discontinuation period which remained under plaintiff's theory of counting time. Plaintiff recited in his January 12, 1988, appeal to the board of adjustment that "[w]e were unable to get a new tenant in the property due to the neighborhood." More significantly, we believe that, if plaintiff was to salvage these remaining forty-five days of opportunity, he was obliged to act with some dispatch in challenging Ms. Moore's interpretation. Instead, he did nothing for nearly fourteen months.[2] Given these circumstances, we cannot conclude that the running of the twelve-month discontinuance period was tolled during this period of delay.

■ Plaintiff also urges that because the lot in question cannot be used for residential purposes due to area requirements the failure of the board of adjustment to grant a variance works an undue hardship. This question must be answered, we believe, by applying the applicable ordinances for granting variances. Plaintiff requested a variance permitting a commercial use of the property. As the district court correctly noted, the ordinance does not permit a variance with respect to a prohibited commercial use in a residential district. In an R–3 zone, variances are only permitted for purposes of obviating noncompliance with setback, area, width, depth, height, off-street parking, or screening restrictions as applied to residential uses.

We have considered all arguments presented and find no basis for disturbing the decision of the district court. The judgment of the district court is affirmed.

AFFIRMED.

---

**2.** It appears that under the rules of the board of adjustment appeals from actions of the zoning administrator were required to be taken within 15 days of notification of an adverse ruling. The board does not raise a statute of limitations defense to plaintiff's challenge to the conclusions contained in the November 25, 1986, let-

ter. This may be due to the fact that the appeal to the board was not taken from that letter but from the January 12, 1988, letter from Ms. Moore denying a favorable zoning certificate for the property. We do not rely on the statute of limitations in deciding this appeal.