939 P.2d 418

CITY OF GLENDALE, a municipal corporation of the State of Arizona, Plaintiff/Counterdefendant/Appellant,

v.

Amer "Omar" ALDABBAGH dba Foxy's Show Club; Amer "Omar" Aldabbagh and Jane Doe Aldabbagh, husband and wife; David B. Benz and Jane Doe Benz, husband and wife, Defendants/Counterclaimants/Appellees.

No. CV-96-0342-PR.

Supreme Court of Arizona, En Banc.

June 10, 1997.

Peter A. Van Haren, Glendale City Attorney by David A. Pennartz, Assistant City Attorney, Phoenix, for City of Glendale.

David K. Jones, PC by David K. Jones, Phoenix, for Amer "Omar" Aldabbagh and David B. Benz.

## OPINION

MARTONE, Justice.

We are asked to decide whether the right to use a preexisting nonconforming use can be lost through nonuse, short of an intent to abandon. We hold that an intent to abandon is not required and that a preexisting nonconforming use can be lost where its nonuse is attributable, at least in part, to the property owner.

## I. Background

Amer "Omar" Aldabbagh owns an adult entertainment business in Glendale that would violate Glendale's zoning ordinance but for its status as a preexisting nonconforming use. The county attorney filed a nuisance abatement action against Aldabbagh under A.R.S. § 12–801 *et seq.*, alleging that his club was used "for the purpose of lewdness, assignation or prostitution," § 12–802, and seeking an order of abatement closing the building for a period of one year under § 12–806(B)(4). The building was closed on May 28, 1992, pursuant to a temporary restraining order. After an evidentiary hearing, the court found that the business was used on a continuing basis for the commission of sexual acts for money. It thus granted preliminary injunctive relief on June 17, 1992. On December 22, 1993, the parties stipulated to the dismissal of the nuisance abatement action with prejudice because, having been closed for more than one year, the county attorney had obtained relief, with respect to closure, "to the fullest extent allowed by statute." Stipulation for Dismissal, Dec. 22, 1993, at 2.

Within one year of regaining possession of the premises, Aldabbagh leased them to David Benz, who applied for a license to operate an adult entertainment business. Glendale rejected the application, claiming that the property had lost its status as a lawful preexisting nonconforming use because it had not been so used for a period exceeding one year. Article IV, section 7(d) of Glendale's zoning ordinance provides as follows:

> No building, structure or land in or on which a nonconforming use is abandoned or ceased to be carried on for a period exceeding one year or is superseded by a conforming use subsequent to the enactment of this ordinance shall again be devoted to any prohibited use....

Glendale then filed this action against Aldabbagh and Benz, seeking a declaration that the preexisting nonconforming use was lost because the business had "ceased to be carried on for a period exceeding one year"

within the meaning of its zoning ordinance. The trial court held that the loss of a preexisting nonconforming use requires a showing of intent to abandon. Because the parties stipulated that Aldabbagh did not intend to abandon his use of the club, the court ordered Glendale to issue a zoning clearance to Benz to allow the property to be used for adult entertainment.

The court of appeals affirmed. *City of Glendale v. Aldabbagh*, 187 Ariz. 235, 928 P.2d 659 (App.1996). It held that a showing of the owner's intent to abandon the use was necessary and that the discontinuance of the use for the period exceeding one year only created a rebuttable presumption of intent to abandon. This meant that the owner could rebut it by proving no intent to abandon. Judge Gerber wrote separately to express the view that intent to abandon was not required under the ordinance as long as the cessation of the nonconforming use by the property owner was voluntary. Because the issue is one of first impression, we granted review. Rule 23(c)(4), Ariz. R. Civ.App. P.

## II. Analysis

■ The Glendale ordinance provides that a preexisting nonconforming use is lost if it is (1) abandoned, or (2) ceased to be carried on for a period exceeding one year. Glendale argues that while abandonment requires a showing of intent, the ordinance is in the disjunctive and any nonconforming use that is ceased to be carried on for a period of more than one year is lost, wholly apart from the intent or actions of the property owner. Aldabbagh and Benz argue that whatever the formulation of the city's ordinance, a preexisting nonconforming use cannot be lost without a showing of intent to abandon. We reject Aldabbagh and Benz's argument that an intent to abandon is essential to a finding of cessation. But we also reject Glendale's argument that any nonuse for a period of more than one year, even for reasons unattributable to the property owner, constitutes cessation. Instead, we hold that to qualify as a nonconforming use that has "ceased to be carried on for a period exceeding one year," the period of nonuse must be attributable at least in part to the property owner.

■ Abandonment requires a subjective intent to give up the nonconforming use. *See* 4 Ziegler, *Rathkopf's The Law of Zoning and Planning* § 51B.02[1], at 51B–4 (4th ed.1991). To cease means "to come to an end" or "stop." *Webster's Third New International Dictionary* 358 (1976). Thus, if we were to look only at the ordinary meaning of words, we would conclude that there is nothing about the word "ceased" that requires an intent to abandon. But in the zoning context, the words "ceased" or "cessation" have taken on variations in meaning, influenced in part by legislative intent and concepts of equity.

Intent has been injected into the cessation analysis in two ways. Some courts have concluded that "to discontinue," "to cease," or "to abandon" are synonymous and the party opposed to the use must prove an intent to abandon. *See, e.g., Board of Zoning Adjustment for Lanett v. Boykin*, 265 Ala. 504, 92 So.2d 906, 909 (1957); *Pappas v. Zoning Board of Adjustment of Philadelphia*, 527 Pa. 149, 589 A.2d 675, 677 (1991). Other courts, as did our court of appeals here, have construed cessation provisions to create a rebuttable presumption of intent to abandon. *See, e.g., Ansley House, Inc. v. City of Atlanta*, 260 Ga. 540, 397 S.E.2d 419, 421 (1990); *Martin v. Beehan*, 689 S.W.2d 29, 31 (Ky.App.1985).

We know, in light of the breadth of Glendale's argument, that it did not intend cessation to be synonymous with abandonment. Its ordinance is written in the disjunctive. If cessation were synonymous with abandonment, Glendale's decision to include cessation in its ordinance would have no meaning. We thus conclude that cessation is not synonymous with abandonment.

■ The second approach, that of interpreting a cessation provision to give rise to a presumption of intent to abandon, does respect the disjunctive nature of the ordinance and gives some substantive content to the term by shifting the burden of proof. But this approach does not give full effect to the purpose behind the cessation provision. Ordinances like Glendale's that terminate a nonconforming use based upon cessation are

intended to eliminate a factual inquiry into a property owner's state of mind. *See* 4 Ziegler, *Rathkopf's The Law of Zoning and Planning* § 51B.02[2], at 51B–9. Imposing an intent to abandon requirement has been criticized as "not only 'unfortunate but silly' because it encourages property owners who have actually abandoned their nonconforming use to commit perjury, and because it not only disregards but supersedes the intention of the legislative body that designed the ordinance." *Hartley v. City of Colorado Springs*, 764 P.2d 1216, 1223 (Colo.1988) (quoting 4A N. Williams & J. Taylor, *American Land Planning Law* § 115.06, at 193 (rev. ed.1986)). Legislative bodies that adopt a cessation provision are intending to go as far as they are constitutionally or statutorily able to go in extinguishing preexisting nonconforming uses. An intent to abandon analysis frustrates that purpose.

■ The elimination of nonconforming uses is a fundamental problem in zoning. 4 E.C. Yokley, *Zoning Law and Practice* § 22–14, at 99 (4th ed.1979). Public policy encourages the elimination of nonconforming uses "primarily because they detract from the effectiveness of comprehensive land use regulation, often resulting in lower property values and blight." *Rotter v. Coconino County*, 169 Ariz. 269, 272, 818 P.2d 704, 707 (1991). Consequently, "nonconforming uses are *excepted* from the general rule that zoning ordinances should be strictly construed in favor of the property owner." *Outdoor Systems, Inc. v. City of Mesa*, 169 Ariz. 301, 307, 819 P.2d 44, 50 (1991).

Because preexisting nonconforming uses are protected in Arizona by statute, A.R.S. § 9–462.02, we have never had to explore the outer contours of their protection under the constitution. Instead, we have just said that "nonconforming uses should be eliminated or reduced to conformity as quickly as possible within the limits of fairness and justice." *Rotter*, 169 Ariz. at 272, 818 P.2d at 707.

Our views on what is a just and fair construction of the cessation component of the Glendale ordinance are informed by what other courts have done under similar circumstances. Zoning ordinances terminating nonconforming uses when ceased for a specified

period have been held to be equitable as long as the cessation of use is within the property owner's control. In *City of Minot v. Fisher*, 212 N.W.2d 837, 841 (N.D.1973), the court held that a discontinuance statute presumed abandonment after the designated time period except "in situations where the cessation of use was beyond the control of the property owner." Similarly, a Pennsylvania ordinance prohibiting the resumption of nonconforming uses that were discontinued for twelve months created a presumption of abandonment but terminated the use only if it was shown that the discontinuance "was not caused by circumstances beyond the landowners' or occupiers' control." *Spencer v. Zoning Hearing Bd. of Rockland Township*, 111 Pa.Cmwlth. 111, 533 A.2d 497, 499 (1987).

In *Smith v. Board of Adjustment of Cedar Rapids, Iowa*, 460 N.W.2d 854, 857 (Iowa 1990), the court held that an ordinance may dispense with subjective intent, yet concluded that the right to continue a nonconforming use was nevertheless dependent upon the actions of the property owner. In *Ernst v. Johnson County*, 522 N.W.2d 599, 604 (Iowa 1994), the same court concluded that "[p]eriods of discontinuance which are caused by circumstances beyond the control of a property owner will not cause the loss of a nonconforming use." In construing a New Mexico discontinuance statute, the court found that proof of intent to abandon was unnecessary but that "mere temporary suspension of use resulting from causes beyond the owner's control does not constitute an abandonment or discontinuance within the meaning of the Code." *Texas Nat'l Theatres, Inc. v. City of Albuquerque*, 97 N.M. 282, 639 P.2d 569, 574 (1982).

■ We have found nothing that would prohibit Glendale from enacting an ordinance that dispenses with the intent to abandon requirement. On the other hand, Glendale may not terminate a use just because one year passes. Some conduct within the control of and attributable to the property owner must be a cause of the condition justifying the termination.

The termination of a nonconforming use does not require a decision by the property

owner to discontinue the use. A nonconforming use may be lost through negligence or inadvertence. A use may also be lost if a person engages in civil or criminal misconduct that the property owner knows or should know could lead to involuntary closure and indeed does lead to closure.

 Glendale argues that the closing of Aldabbagh's business for more than a year pursuant to the injunction is proof of conduct attributable to Aldabbagh sufficient to satisfy the cessation component of its ordinance.[1] There is no question that Aldabbagh was properly restrained from using the club for a period in excess of one year. There is also no question that had the findings in support of granting the preliminary injunction been made final in the action, Aldabbagh would have been collaterally estopped from relitigating those facts. But the parties stipulated to the dismissal of the action before the facts were finally adjudicated. Thus, the findings in connection with the preliminary injunction have no preclusive effect and Glendale may not rely upon them in this action.

Both Glendale and Aldabbagh are entitled to a trial on the merits of Glendale's allegations of misconduct. If Glendale proves that Aldabbagh engaged in wrongdoing that led to the closure of the club, then Glendale will be entitled to a judgment declaring the invalidity of Aldabbagh's nonconforming use. Such a trial will be governed by the rule we adopt here, under which Aldabbagh's declaration of intent not to abandon his use will not save the use as long as Glendale proves that the period of nonuse is attributable to his unlawful conduct.

### III. Conclusion

The judgment of the superior court is reversed, the opinion of the court of appeals is vacated, and the case is remanded to the superior court for further proceedings consistent with this opinion.

ZLAKET, C.J., JONES, V.C.J., and FELDMAN and PELANDER, JJ., concur.

---

1. Glendale also argues that Aldabbagh's plea to criminal liquor charges and a civil settlement in a related RICO action may also be considered. But the criminal action and the RICO settlement had nothing to do with the closure of Alda-

bbagh's club. There is thus no causative relationship between the conduct underlying these proceedings and the nonuse of the property. We therefore only consider Glendale's claim in connection with the nuisance action.

MOELLER, J., did not participate in the determination of this matter. JOHN PELANDER, Judge, Court of Appeals, Division Two, was appointed to sit in his stead pursuant to Ariz. Const. art. VI, § 3.