Thomas S. "Steve" and Nancy C. BROWN, Dennis K. Cloward, and Joseph T. Bowers, Plaintiffs and Appellants,

v.

SANDY CITY BOARD OF ADJUSTMENT; and Sandy, a political subdivision of Utah, Defendants and Appellees.

No. 970156–CA.

Court of Appeals of Utah.

March 26, 1998.

J. Craig Smith and Scott M. Ellsworth, Salt Lake City, for Appellants.

Jody K. Burnett, Salt Lake City, Steven C. Osborn, Sandy, for Appellees.

Before BENCH, BILLINGS and JACKSON, JJ.

## OPINION

JACKSON, Judge:

This appeal comes to us from the trial court's order granting summary judgment to the Sandy City Board of Adjustment (Board). The trial court affirmed the Board determination that Sandy City's interpretation of the Sandy City Development Code (Code) prohibiting leases of less than thirty days in residential zones was correct. We reverse.

## BACKGROUND

Thomas and Nancy Brown, Dennis Cloward, and Joseph Bowers (the owners) owned homes in Sandy City. The homes owned by the Browns and Cloward were in areas zoned R–1–8 Residential. Bowers's home was in an area zoned R–1–10 Residential.

Both R–1–8 and R–1–10 residential zones permit the use of single-family dwelling structures, Sandy City, Utah, Dev.Code §§ 15–7–5(b)(2), 15–7–3(b)(2) (1996), and contemplate the establishment of "a residential environment . . . that is characterized by moderate densities, . . . a minimum of vehicular traffic and quiet residential neighborhoods favorable for family life," id. §§ 15–7–3(a), 15–7–5(a). The Code further states that:

1. Sandy also cites a similar provision found elsewhere in the Code to establish that the ordinance prohibits uses not authorized on zoned lands. The provision states:
   No land shall be used or occupied and no building or structure shall be designed, erected, altered, used or occupied for any use except those uses specifically permitted on the land upon which the building or structure is located or erected or use established as permitted in the regulations for the district in which said land is located.
   Sandy City, Utah, Dev.Code § 15–21–11 (1996). Although there are slight differences in the wording of these two sections, the effect of each is the same in the context of this case.

No building or part thereof or other structure shall be erected, altered, added to or enlarged, nor shall any land, building, structure, or premises be used, designated, or intended to be used for any purpose or in any manner other than is included among the uses hereinafter listed as permitted or conditional uses in the district in which such building, land or premises are located.

*Id.* § 15–6–2.[1]

The Code defines a single-family dwelling as follows: "*Dwelling, Single Family.* A detached housing unit within a structure with kitchen and sleeping facilities, designed for occupancy by one family, excluding accessory apartments and extended living areas which may be approved as provided for in [this Code]." *Id.* § 15–2–2. The Code also defines a family as "[a]n individual or two or more persons related by blood, marriage or adoption, or a group not to exceed four unrelated persons living together as a single housekeeping unit." *Id.*

All the owners' homes were single-family dwellings as defined by the Code. Each of the owners leased their homes to families for periods of several days to several months.

In December 1995, the Sandy City Community Development Staff (staff) began interpreting the Code to prohibit rental of any single-family dwelling for fewer than thirty days. Accordingly, the staff told the owners that any rental of their single-family dwelling for fewer than thirty days in the R–1–8 or R–1–10 zones was prohibited and asked them to refrain from any further short term rentals.[2]

2. The letters sent to the owners identified these homes as "transitory lodging facilities." Although the use of this term could be construed as an indication that Sandy had determined that the facilities were being used as hotels or boarding facilities, no such determination was made before or during the hearing. The staff apparently used the terms "transitory lodging facility" and "place of public accommodation" to indicate a home that had been leased for fewer than thirty days. Further, Sandy concedes that the sole reason for its action on these properties was that they were being leased for periods less than 30 days.

The owners appealed the staff's interpretation of the Code to the Board pursuant to Utah Code Ann. § 10–9–704(1)(a)(i) (1996) and Sandy City, Utah, Dev.Code § 15–5–5(A)(1) (1996). Applying a "rational basis" test on review, the Board upheld the staff's interpretation of the ordinance. The owners then filed an appeal of the Board's determination to the district court. On cross-motions for summary judgment, the district court entered summary judgment against the owners, upholding the Board's determination.

The owners filed this appeal.

## ISSUES

There are two interrelated issues for review. The first issue is whether the Board used the proper standard of review in its review of the staff interpretation of the Code and whether the standard requires us to give any deference to the Board's determination. The second issue for review is whether the Board erred when it determined that leasing of a single-family dwelling for a period of fewer than thirty days is prohibited in the R–1–8 and R–1–10 zones.

## ANALYSIS

I.  Board Review of Staff Interpretation

The question of what standard a board of adjustment must apply in reviewing staff interpretation is a matter of first impression with this court. When the Board reviewed the staff's interpretation of the zoning ordinance, it applied a "rational basis" test. Under this "rationality" test, the owners were required to "establish that the staff had no rational basis for its" interpretation that residential zones excluded leasing single-family dwellings for a period shorter than thirty days. Pointing to Utah Code Ann. § 10–9–704 (1996), the owners argue that the proper

standard of review was a correctness standard.

■ It is clear that § 10–9–704 requires the Board to review the staff's interpretation for correctness, giving it no deference. Although "[t]he person or entity making the appeal has the burden of proving that an error has been made," Utah Code Ann. § 10–9–704(3) (1996), the person need show only an "error in an[ ] order, requirement, decision, or determination made by an official in the administration or interpretation of the zoning ordinance." *Id.* § 10–9–704(1)(a)(i). There is no requirement that the Board give any deference to the administrator or executive official making the determination.

Sandy contends that because board members are not legally trained individuals, we need not "impose rigid technical requirements upon their procedure." It further argues that, because the Board was not comprised of lawyers, the Board was "not intuitively aware of the significance of terms such as " 'reasonable [or] rational.' " Thus, the fact that they used the rational basis standard of review was "really immaterial . . . [s]o long as the procedure afforded [the owners] was 'orderly, impartial, judicious and fundamentally fair.' "

We cannot agree. Although many individuals not trained in legal procedure may not understand the concept of a standard of review, it is clear to this court that a person of ordinary intelligence can easily understand the difference between the questions, "Was the staff's interpretation correct?" and "Was the staff's interpretation rational?" It is also clear to us that the Board used the rational basis standard in its review of the staff's interpretation.[3]

■ Contrary to Sandy's contention, the fact that the Board used the rational basis test is material to the outcome of the deci-

---

3.  Although the board members variously referred to their duty to interpret the statute, in several comments by board members the fact that they were making a determination as to the reasonableness of the interpretation, rather than the correctness of the interpretation, was clear. The motion upon which the Board voted was "that the Sandy City staff did not err and that there is substantial, rational[ ] basis for the City's deter-

mination that the use of a dwelling as a place of public accommodation, such as renting it on a daily or weekly basis, is not an allowed use in a single[-]family R–1 zone." The board member making the motion further stated, "it is very rational[ ] to me, being a member of a family, that these nightly rentals are not housekeeping units."

sion. First, a rational interpretation may be one that, although not completely correct, has a basis in reason. Thus, in this case the Board may have had some rationale to conclude that short-term rental was precluded by the zoning ordinance, though that rationale may have been incorrect. Second, the Board's scope of review necessarily affects the scope of review of this court. If the Board's standard of review is to simply determine whether the staff's interpretation was rational, we would review the Board's decision to determine whether the Board acted illegally, *see* Utah Code Ann. § 10–9–1001(3)(b) (1996), in concluding that the decision was rational. On the other hand, if the Board's standard of review is a correctness review, we review the Board's decision to determine whether the Board acted illegally in concluding that the decision was correct.

## II. Rental of Single–Family Dwelling for Periods Shorter than Thirty Days

■ The sole issue for review on the merits is whether the Board's affirmation of the staff's interpretation of the Code to prohibit

leasing of property for less than thirty days is correct.[4] The question is one of interpretation of an ordinance, and, thus, we review it under a correctness standard.[5] Because the Board's standard of review as to the staff interpretation was also a correctness standard, we review the Board's determination as follows: whether the Board correctly concluded that the staff's interpretation of the ordinance was correct.

■ "In interpreting the meaning of ... [o]rdinance[s], we are guided by the standard rules of statutory construction." *Brendle v. City of Draper,* 937 P.2d 1044, 1047 (Utah Ct.App.1997). However, "because zoning ordinances are in derogation of a property owner's common-law right to unrestricted use of his or her property, provisions therein restricting property uses should be strictly construed, and provisions permitting property uses should be liberally construed in favor of the property owner." *Patterson v. Utah County Bd. of Adjustment,* 893 P.2d 602, 606 (Utah Ct.App.1995). We first look to the plain language of the ordinance to guide our

**4.** Both parties agree that this is the sole issue for review. The issue before the Board was not whether the particular use of the specific properties involved in this case was properly determined to be in violation of the Code. Thus, although there is evidence in the record relating to the nature of the individuals leasing the properties, i.e., whether they were related or not and the numbers of people renting a house at one time, and the condition of the properties at issue, that evidence is irrelevant to our determination.

**5.** The parties argued at considerable length in their briefs about the level of deference the Board's interpretation should be given on review. Utah Code Ann. § 10–9–1001 states that in reviewing land use decisions "[t]he courts shall ... determine only whether or not the decision is arbitrary, capricious, or illegal." Utah Code Ann. § 10–9–1001(3)(b) (1996). Although this statutory provision expressly applies only to the district court, "the standard for our review of [a] [b]oard's decision is the same standard established in the Utah Code for the district court's review." *Patterson v. Utah County Bd. of Adjustment,* 893 P.2d 602, 603 (Utah Ct.App. 1995).

There are times where deference is due the Board's decision. For example, we have explained that a board of adjustment's "actions are accorded substantial deference and will be rejected on appeal only if they are so unreasonable as to be arbitrary and capricious or if they violate

the law." *Id.* We have also explained that "we will not substitute our judgment on matters of public policy normally left to [a] [b]oard's discretion." *Id.* at 604. Thus, a board's decision to permit or reject a proposed land use is entitled to deferential treatment to the extent that it will be affirmed if the evidence is adequate " 'to convince a reasonable mind to support' " the decision. *Id.* at 604 n. 6 (citation omitted).

However, there are times when no deference is due. For example, "whether or not [a] [b]oard's decision is illegal depends on a proper interpretation and application of the law. These are matters for our determination, and we accord no deference to the district court or [a] [b]oard." *Id.* at 604. Thus, if a board determines that it will allow a particular land use, we will not defer to that decision where the board failed to base the decision on evidence that could reasonably support the use, or where the decision was made based on an incorrect understanding or application of a statute or ordinance, even if the incorrect understanding or application was reasonable or consistent with prior board application.

It is true that some other jurisdictions give some discretion to boards of adjustment on interpretations of the zoning ordinances which they administer. However, the law in Utah is clear that interpretation of the meaning of zoning ordinances by a board of adjustment is not entitled to deference. *See id.* at 604; *Town of Alta v. Ben Hame Corp.,* 836 P.2d 797, 800–01 (Utah Ct.App. 1992).

interpretation. *See Brendle,* 937 P.2d at 1047. Only if the ordinance is ambiguous need we look to legislative history to ascertain legislative intent. *See id.*

■ Accordingly, we first look at the language of the Code. The Code permits use of a "housing unit within a structure with kitchen and sleeping facilities, ... for occupancy by one family." *Id.* § 15–2–2. A family is "[a]n individual or two or more persons related by blood, marriage or adoption, or a group not to exceed four unrelated persons living together as a single housekeeping unit." *Id.* The Code prohibits a building to "be used, designated, or intended to be used for any purpose or in any manner other than is included among the uses ... listed as permitted or conditional uses." *Id.* § 15–6–2. Thus, the ordinance unambiguously requires that a single-family dwelling located in the two residential zones at issue be used as a building for occupancy by either related people or no more than four unrelated people operating as a household.

Both parties agree that the Code never places an express durational limit on the use of any property. Even so, Sandy submits two arguments that, despite the absence of a durational limitation on occupancy of single-family dwellings, short-term leases are prohibited. It argues that (1) the Code does not specifically permit short-term leases of property and (2) the short-term lease of residential property is inconsistent with the purposes of residential zoning.

The first objection is untenable. The Code specifically permits use of a dwelling for *occupancy* by a single family. Thus, if a single family occupies a home, the structure is being used as permitted. However, Sandy contends that, because the Code does not specifically permit occupancy by a single *tenant family for less than thirty days,* occupancy by a single *tenant family for less than thirty days* is proscribed by the ordinance. We are not willing to import such a restriction. The Code does not limit the permitted use by referencing the type of estate the occupying family holds in the property or the duration of the occupancy. Thus, it is irrelevant what type of estate, if any estate at all, the occupying family has in the dwelling, i.e.,

whether the family holds a fee simple estate, a leasehold estate, a license, or no legal interest in the dwelling. It is equally irrelevant whether the occupying family stays for one year or ten days. The only relevant inquiry is whether the dwelling is being used for occupancy by a single family; if it is, the ordinance has not been violated. Sandy's argument, taken to its logical conclusion, would mean that the staff could restrict any use without limitation by simply arguing that the use was one not specifically mentioned in the general permitted use provisions. For instance, it would allow the staff to prohibit an owner from leasing the property under any conditions because the ordinance does not specifically permit occupancy by a single family *leasing the dwelling.* It would also allow the staff to prohibit tenancy-in-common time-share arrangements since the ordinance does not permit occupancy by a single family *not owning as joint tenants.*

Sandy's second argument is more substantial. It contends that, given the express purpose of the residential zones, to establish "a residential environment" and "quiet residential neighborhoods favorable for family life," Sandy City, Utah, Dev.Code §§ 15–7–3(a), 15–7–5(a) (1996), the Board was correct in concluding that short-term property rental was prohibited by the ordinance. Sandy, citing *Ewing v. City of Carmel–by–the–Sea,* 234 Cal.App.3d 1579, 286 Cal.Rptr. 382 (1991), argues that it has the authority to prohibit transient occupancy in residential zones because transient occupants erode the residential quality of a neighborhood. *See, e.g., id.,* 286 Cal.Rptr. at 388 (stating "[transient] rentals undoubtedly affect the essential character of a neighborhood and the stability of a community"). The *Ewing* appeal involved a zoning ordinance that specifically prohibited transient occupancy. *See id.* at 383–84. The *Ewing* plaintiffs argued that their civil rights were violated because Carmel–by–the–Sea had passed an ordinance prohibiting leasing of residential property for less than thirty days to transient renters. *See id.* In this case, the owners do not dispute that Sandy could pass a similar ordinance, *cf., e.g., Town of Alta v. Ben Hame Corp.,* 836 P.2d 797, 800 (Utah Ct.App.1992) (citing ordinance prohibiting short-term leas-

ing), they argue only that the ordinance as it now reads does not prohibit such a practice. Thus, they argue that *Ewing* is not relevant to this case. We agree.

Despite Sandy's ability to pass an ordinance to restrict short-term leasing, as discussed above, we must construe existing zoning ordinances strictly against the city. Thus, we must conclude that short-term leases of residential properties are not prohibited by the zoning ordinance.[6] Sections 15–7–3(a) and 15–7–5(a) of the Code "represent[ ] [only] the broad goal sought to be achieved by the [city] in enacting regulations governing" uses of properties in these zones. *Patterson*, 893 P.2d at 610. Through the purpose declaration, Sandy explained what its goal was in establishing the residential zones. It then enumerated specific regulations to meet that goal. "By satisfying the *actual* regulations enumerated in [§§ 15–7–3(b)(2) and 15–7–5(b)(2) ] the [use of the properties] has met the legal requirements of th[ose]

section[s]," *id.* (emphasis added), and, thus, met the general purpose of the statute. Although we recognize that short-term leases *may* disrupt the residential environment of a neighborhood in some instances,[7] by failing to prohibit short-term leases, Sandy City has implicitly determined that such practices are conducive to a residential environment.[8] In other words, "[w]e will not find a violation of law simply because [the permitted use may appear] inconsistent with the general intent statement ... when [the use] is in compliance with the substantive provisions of the ordinance." [9] *Id.*

Accordingly, we conclude that the Board erred when it concluded that the staff "rationally" interpreted the zoning ordinance to prohibit leasing of property for less than thirty days in the residential zones.[10]

## CONCLUSION

We conclude that the Board incorrectly applied a "rational basis" standard of review

6. Although on a cursory reading, our decision in *Ben Hame*, 836 P.2d at 797, may appear inconsistent with our holding in this case, it clearly is not. In *Ben Hame* we concluded that use of a building "as a 'lodging facility'" was "not an accessory use customarily incidental to the main use" of a single-family dwelling. *Id.* at 802. Our decision was largely premised on two grounds: First, the zoning ordinance in question defined permitted use of single-family dwellings to exclude use of the dwellings as "hotels, apartment hotels, boarding houses, lodging houses, mobile homes, tourist courts or apartment courts," *id.* at 799 (emphasis omitted); second, Ben Hame conceded that the building was being used as a lodging facility, i.e., the home was advertised to accommodate 12 to 20 people, provide an on-site chef, and provide airport shuttle services. *Id.* at 799, 802.

In this case, the zoning ordinance does not prohibit use of a single-family dwelling as a lodging facility. Even if it did prohibit such use, the owners have not conceded that the homes are used as lodging facilities, and the single question before us is whether the Board correctly concluded that *all short-term leases* are prohibited by the ordinance. Thus, the sole issue on review before us is whether one can imply durational restrictions on the use of a single-family dwelling. This issue was the sole issue of review before the Board as well.

7. This is not a case where the permitted use is wholly inconsistent with the stated purpose—one may lease property to another for a short term and still maintain the residential quality of a neighborhood.

8. Sandy concedes that "[i]f a single[-]family residence were rented for two weeks to a traditional family—father, mother and accompanying children—the use would nonetheless be prohibited as a rental for 30 days or less." Although short-term leases to traditional families may still disrupt a neighborhood, it seems to be less disruptive than running a hotel might be.

This concession also points to what seems to be the pragmatic reason for this case—that the long-term residents do not like the type of people who lease the homes on a short-term basis. However, Sandy is not arguing that specific violations, besides the short-term nature of the leases, have been alleged and that Sandy has determined the owners have therefore violated the zoning ordinances. Rather, Sandy is only arguing that the interpretation of the statute prohibiting all short-term leases is correct.

9. Our conclusion is consistent with the case law of other jurisdictions. *See City of Portland v. Carriage Inn*, 67 Or.App. 44, 676 P.2d 943, 945 (1984) (holding transient occupancy permitted in zone when no durational requirement was expressed); *Strauss v. Zoning Hearing Bd.*, 147 Pa.Cmwlth. 603, 608 A.2d 1105, 1106, 1109 (1992) (holding students were "family" despite short duration of lease).

10. Because our resolution of this issue is dispositive of the case, we need not consider the owners' remaining arguments.

when it reviewed the staff's interpretation of the Code. We also conclude that the Board committed legal error when it affirmed the staff's interpretation of the Code prohibiting short-term leases of single-family dwellings in residential zones. Accordingly, we reverse.

BILLINGS, J., concurs.

BENCH, Judge, concurring in result:

Sandy City relies upon an ordinance in arguing that its Development Code does not permit short-term leases of property. The ordinance provides as follows:

> No land shall be used or occupied and *no building or structure shall be* designed, created, altered, *used or occupied for any use, except those uses specifically permitted* on the land upon which the building or structure is located or erected or use established as permitted in the regulations for the district in which said land is located.

Sandy City, Utah, Dev.Code § 15–21–11 (1996) (emphasis added). Essentially, Sandy takes the position that every use of property is prohibited unless the use is specifically permitted by ordinance. That approach to zoning is diametrically opposed to the common law followed in Utah. *See, e.g., Patterson v. Utah County Bd. of Adjustment*, 893 P.2d 602, 606 (Utah Ct.App.1995) (stating zoning ordinances are to be strictly construed against the municipality because they are "in derogation of a property owner's common-law right to unrestricted use of his or her property").

As the main opinion concludes, short-term rentals are permitted in Sandy unless the city passes an ordinance to specifically prohibit them.