2006 UT App 302

**Edward B. ROGERS, Plaintiff and Appellant,**

v.

**WEST VALLEY CITY, Defendant and Appellee.**

**No. 20050111–CA.**

Court of Appeals of Utah.

July 20, 2006.

Preston S. Howell, Renton, Washington, for Appellant.

J. Richard Catten and Nicole Cottle, West Valley City, for Appellee.

Before GREENWOOD, Associate P.J., BILLINGS and DAVIS, JJ.

## OPINION

GREENWOOD, Associate Presiding Judge:

¶ 1 Edward B. Rogers (Appellant) appeals the trial court's affirmation of the West Valley City Board of Adjustment's (the Board) decision approving Cleone Kirby's nonconforming use of allowing horses on her property (the Property). Appellant argues that

the Board erred in its interpretation of the applicable West Valley City ordinance.[1] We reverse and remand.

## BACKGROUND

¶2 Beginning in 1958, when her family acquired the Property,[2] located at 3724 South 3200 West, in West Valley City, Utah, Ms. Kirby regularly kept horses, cattle, and other animals there. Horses were maintained on the Property through 2000 and for a significant period during 2001 and 2002. However, between 2002 and 2004, there were no horses or other livestock on the Property. In 2004, Alfred Newman, a trustee for Ms. Kirby's family, filed an application with the Board seeking a nonconforming use determination to continue keeping livestock on the Property. Subsequently, the Board met to consider the application.[3]

¶3 Since 1977, Appellant has owned a forty-two-unit apartment complex bordering the Property. When the complex was constructed in the early 1970s, the builder erected a cedar fence along the border between the apartment complex and the Property. Prior to the construction of the cedar fence, members of the Kirby family built their own fence to separate the properties. However, that fence apparently was removed after the cedar fence was completed.

¶4 Sometime in 2002, two men representing Appellant, whom Ms. Kirby identified as Lou and Joe, approached her about cutting down some cottonwood trees that were growing on Appellant's property. Ms. Kirby stated that Lou and Joe wanted to drop the trees onto the Property so they would not hit the apartments. Ms. Kirby further stated that the men told her they would have to take down the cedar fence to drop the trees, but that Appellant would replace the fence. Appellant, however, stated that neither he nor "any agent of mine that I know of" told Ms. Kirby that he would replace the cedar fence. Ms. Kirby lived on social security income and could not afford to replace the cedar fence.

¶5 Prior to Appellant's removal of the cedar fence, Ronald Richins's brother had boarded horses on the Property for two years.[4] After the fence was removed, Ronald Richins's brother moved his horses. Ronald Richins stated before the Board that Appellant's failure to replace the fence was "one of the reasons we couldn't put the horses back on the [P]roperty."

¶6 In 2003, Barbara and Raymond Spray returned to Utah from Oklahoma to be closer to family. In June 2004, about one month before the Board meeting, Ronald Richins and the Sprays constructed a chain link fence around the Property. The Sprays then began boarding their horse there.

¶7 At the Board meeting to discuss the nonconforming use application, Ms. Kirby provided twenty-four signed statements from prior property owners and surrounding property owners stating that horses had been on the property a substantial portion of every year since the late 1960s or early 1970s.[5] Alfred Newman also provided a letter stating that animals had been kept on the property beginning in 1958, when the Kirby family acquired the Property.

¶8 Citing concerns that included the potential spread of West Nile virus, Appellant opposed the nonconforming use of allowing horses on the Property. Appellant also stated that the cedar fence he had removed was located on his own property. He explained that he had taken the cottonwood trees down because apartment residents were complaining of allergies and because the trees' roots

---

1. Appellant also argues that the Board erred in its determination that Ms. Kirby intended to continue allowing horses on the Property because the Board's decision was not supported by substantial evidence. Because we decide this case on other grounds, we do not reach this issue.

2. Ms. Kirby presently has a life estate in the Property.

3. In 1980, West Valley City incorporated and enacted zoning provisions.

4. It does not appear that Ronald Richins's brother is more specifically identified in the record or that he appeared before the Board.

5. There was some discrepancy among those providing letters about when horses were first kept on the Property. However, there was consensus that horses had been kept there at least since the early 1970s.

were "breaking up the asphalt" in the apartment building's parking area.

¶ 9 After hearing testimony from area residents and others, including members of the Kirby family and Appellant, the Board voted to approve the nonconforming use on the Property. The Board members discussed Ms. Kirby's assertion that she intended to return horses to the Property, as well as the possible reasons for her delay in constructing another fence. At least one Board member found it significant that during the two years when horses were absent from the Property, Ms. Kirby maintained it as a pasture and did not attempt to develop or otherwise transform it. In its decision, the Board stated that animals had historically been kept on the Property and that "the property owners did not intend to abandon that use for the keeping of animals."

¶ 10 Appellant filed a Petition for Review with the trial court, which affirmed the Board's decision. This appeal followed.

## ISSUE AND STANDARD OF REVIEW

¶ 11 Appellant contends that the Board erred when it approved Ms. Kirby's nonconforming use of allowing horses on her property. Appellant argues that under the applicable West Valley City ordinance, Ms. Kirby's intent was irrelevant to the issue of whether her nonconforming use was abandoned.

¶ 12 "[W]e review the administrative decision just as if the appeal had come directly from the agency" and accord no particular deference to the trial court's decision. *Wells v. Board of Adjustment of Salt Lake City Corp.,* 936 P.2d 1102, 1104 (Utah Ct. App.1997) (quotations and citations omitted). "The Board will be found to have exercised its discretion within the proper boundaries unless its decision is arbitrary, capricious, or illegal." *Patterson v. Utah County Bd. of Adjustment,* 893 P.2d 602, 604 (Utah Ct.App. 1995). "[T]he Board's decision can only be

considered arbitrary or capricious if *not* supported by substantial evidence." *Id.*

## ANALYSIS

¶ 13 Appellant contends that the plain language of the relevant West Valley City ordinance precludes the Board's consideration of Ms. Kirby's intent. Appellant maintains that under the ordinance, a landowner's intent is irrelevant to determining whether a nonconforming use has been abandoned. Therefore, Appellant argues that the Board erred in basing its permission to resume the nonconforming use on whether Ms. Kirby intended to return horses to the Property.

¶ 14 The West Valley City Municipal Code states, in relevant part:

A nonconforming use of land lawfully existing on the effective date of this Chapter may be continued provided such nonconforming use shall not be expanded or extended into any other open land.... If the nonconforming use is discontinued for a continuous period of more than one year it shall constitute an abandonment of the use and any future use of such land shall conform to the provisions of the zone in which it is located.

West Valley City, Utah, Mun.Code § 7–18–106(3) (2006).

¶ 15 To determine whether the Board's decision was error, we begin by considering the proper interpretation of the applicable ordinance. "In interpreting the meaning of . . . [o]rdinance[s], we are guided by the standard rules of statutory construction." *Brown v. Sandy City Bd. of Adjustment,* 957 P.2d 207, 210 (Utah Ct.App.1998) (omission and alterations in original) (quotations and citation omitted). " '[B]ecause zoning ordinances are in derogation of a property owner's common-law right to unrestricted use of his or her property, provisions therein restricting property uses should be strictly construed, and provisions permitting property uses should be liberally construed in favor of the property owner.' " *Id.* (quoting *Patterson,* 893 P.2d at 606).[6] To guide our inter-

6. However, other courts have stated that nonconforming uses should be restricted or eliminated because they "detract from the effectiveness of comprehensive land use regulation, often resulting in lower property values and blight." *City of Glendale v. Aldabbagh,* 189 Ariz. 140, 939 P.2d 418, 421 (1997) (quotations and citation omitted); *accord Toys "R" Us v. Silva,* 89 N.Y.2d 411,

pretation on this issue, we first turn to the ordinance's plain language and need not consult legislative history to determine legislative intent unless the ordinance is ambiguous. *See Brown*, 957 P.2d at 210–11.

¶ 16 The applicable West Valley City ordinance permits nonconforming uses of land, provided such use is not "discontinued for a continuous period of more than a year." West Valley City, Utah, Mun.Code § 7–18–106(3). If a use is discontinued for more than a year, "it shall constitute abandonment of the use and any future use of the land shall conform to the provisions of the zone in which it is located." *Id.*

¶ 17 Appellant argues that the term "shall" in Section 7–18–106(3) is mandatory, rather than discretionary, and therefore prevents the Board from considering factors other than whether the nonconforming use resumed within one year. Appellee West Valley City counters that the State should adopt the "rebuttable presumption" rule for pre–2005 cases involving nonconforming use. Appellee contends that this approach will allow for equitable results in unusual circumstances such as the instant case, where the period of non-use was caused by a third party and was allegedly outside the control of the landowner.

¶ 18 Appellee further argues that some courts have determined that discontinuance of a nonconforming use for a time period in excess of the time specified in a zoning ordinance created only a rebuttable presumption of abandonment. *See Metzger v. Bensalem Twp. Zoning Hearing Bd.*, 165 Pa.Cmwlth. 351, 645 A.2d 369, 370 (1994) ("The discontinuance of a use in excess of the time limitation set forth in the zoning ordinance . . . creates a presumption of an intent to abandon. However, the party asserting abandonment must also prove actual abandonment, which cannot be inferred from non-use alone." (internal citation omitted)); *Ansley House, Inc. v. City of Atlanta*, 260 Ga. 540, 397 S.E.2d 419, 421 (1990) (noting that ordinances that do not negate the factor of intent "merely raise[ ] a rebuttable presumption").

¶ 19 The present case was decided under the former Municipal Land Use Development and Management Act, which did not contain a rebuttable presumption standard. The former Act has since been repealed and replaced with the current Land Use Development and Management Act, which *does* contain a rebuttable presumption standard. *Compare* Utah Code Ann. § 10–9–408(1)–(6) (Supp.2004) *with id.* § 10–9a–511(4)(c)–(d) (2005). Appellee urges us to interpret the inclusion of a rebuttable presumption standard in the current Act as an indication of the legislature's prior intent. *See State v. Bishop*, 753 P.2d 439, 486 (Utah 1988) (explaining that "[w]hen a statute is amended, the amendment is persuasive evidence of the legislature's [original] intent").

¶ 20 In this instance, however, we conclude that the term "shall" in West Valley City Municipal Code Section 7–18–106(3) was used advisedly and that we are thus precluded from considering a party's intent. *See Board of Educ. of Granite Sch. Dist. v. Salt Lake County*, 659 P.2d 1030, 1035 (Utah 1983) ("[We] assume[ ] that the terms of a[n] [ordinance] are used advisedly and should be given an interpretation and application which is in accord with their usually accepted meanings."). Moreover, the word "shall" in an ordinance is "usually presumed mandatory and has been interpreted as such previously in this and other jurisdictions." *Pugh v. Draper City*, 2005 UT 12, ¶ 13, 114 P.3d 546 (quotations and citation omitted); *see also Landes v. Capital City Bank*, 795 P.2d 1127, 1131 (Utah 1990) (interpreting "shall be joined" in joinder rule as mandatory).

¶ 21 We therefore determine that the Board erred in its interpretation of West Valley City Municipal Code section 7–18–106(3). Under that section, a landowner's intent is irrelevant in determining whether a nonconforming use has been abandoned. *See* West Valley City, Utah, Mun.Code § 7–18–106(3). Because Ms. Kirby admittedly did not maintain horses on the Property from 2002 to 2004—a period of more than one year—the use was abandoned and future

654 N.Y.S.2d 100, 676 N.E.2d 862, 867 (1996); *see also Rock Manor Trust v. State Rd. Comm'n*, 550 P.2d 205, 206 (Utah 1976) ("We are in

accord with the State's thesis that there is a trend increasingly looking with disfavor upon nonconforming uses.").

uses of the Property must conform to the applicable neighborhood zoning ordinances. *See id.*

¶ 22 Accordingly, we reverse and remand for further proceedings consistent with this opinion.

¶ 23 WE CONCUR: JUDITH M. BILLINGS, Judge, and JAMES Z. DAVIS, Judge.