IN THE UTAH COURT OF APPEALS

----ooOoo----

| | | |
|---|---|---|
| Alonzo Cahoon, | ) | MEMORANDUM DECISION |
| | ) | |
| Plaintiff and Appellant, | ) | Case No. 20110043-CA |
| | ) | |
| v. | ) | |
| | ) | F I L E D |
| Hinckley Town Appeal Authority and | ) | (March 29, 2012) |
| Hinckley Town, | ) | |
| | ) | 2012 UT App 94 |
| Defendants and Appellees. | ) | |

-----

Fourth District, Fillmore Department, 090700068
The Honorable James M. Brady

Attorneys:     Randall L. Jeffs, Provo, for Appellant
               Kaela P. Jackson, Delta, for Appellees

-----

Before Judges Voros, Roth, and Christiansen.

CHRISTIANSEN, Judge:

¶1     Plaintiff Alonzo Cahoon appeals the district court's affirmance of the denial of Cahoon's request for a building permit for his fence by the Hinckley Town Appeal Authority (the Appeal Board).  We affirm.

¶2     On appeal, Cahoon argues that the correct interpretation of Hinckley Town's ordinance required that the Hinckley Town Planning and Zoning Commission grant

Cahoon a building permit for the fence he planned to build.[1]  Specifically, Cahoon asserts that the fence he ultimately built complies with the ordinance because, either by its plain language or with any ambiguity construed in his favor, the ordinance requires the measurement for his front yard to begin at his property line, which extends to the middle of the road.

¶3     The relevant provisions of Hinckley Town's ordinance include the following:

> 10-4-1  PURPOSE
> The Residential Zone (R) is established to provide areas for the encouragement and promotion of an environment for family life by providing for the establishment of one-family detached dwellings on individual lots. . . .  This zone is typically characterized by landscaped lots and open spaces

---

[1]Cahoon has limited his argument on appeal to the illegality of the Appeal Board's decision.  *See* Utah Code Ann. § 10-9a-801(3)(a) (2007) ("The courts shall:  (i) presume that a decision, ordinance, or regulation made under the authority of this chapter is valid; and (ii) determine only whether or not the decision, ordinance, or regulation is arbitrary, capricious, or *illegal*." (emphasis added)).

> When a district court reviews an order of a local land use authority and we exercise appellate review of the district court's judgment, we act as if we were reviewing the land use authority's decision directly, and we afford no deference to the district court's decision.  Like the review of the district court, our review is limited to whether a land use authority's decision is "arbitrary, capricious, or illegal." . . .  A land use authority's decision is illegal if it "violates a law, statute, or ordinance in effect at the time the decision was made."  Because a determination of illegality is based on the land use authority's interpretation of zoning ordinances, we review such determinations for correctness, but we "also afford some level of non-binding deference to the interpretation advanced by" the land use authority.

*Fox v. Park City*, 2008 UT 85, ¶ 11, 200 P.3d 182 (citations omitted).

with lawns, shrubs, small gardens and the keeping of farm animals, fowl and non-dangerous exotic animals.

10-4-8  YARD REQUIREMENTS
The following minium yard requirements shall apply in the R Zone.
A.  Front yard.  Each lot or parcel in the R Zone shall have a front yard of not less than thirty (30) feet.

10-4-9  PROJECTIONS INTO YARDS
A.  The following structures may be erected on or projected into any required yard.
        1.  Fences and walls in conformance with Town codes or ordinances.

10-4-13  OTHER REQUIREMENTS
G.  Walls and Fences.
        1.  A Front Yard Fence that does not obstruct the view (e.g. chain link fence) may be erected to a height of five (5) feet in any front yard abutting a street within the set back area.  The fence shall in no way be closed in with adjacent plant material or strips of materials inserted into the fence so as to obstruct vision.  Any portion of a composite fence above thirty six (36) inches shall not obstruct vision.

Hinckley Town's ordinance also included the following relevant definitions:

Fence—A tangible barrier or obstruction of any material, with the purpose of intent, or having the effect of preventing passage or view across the fence line.  It includes hedges and walls.

Frontage (Lot Width)—The width of the lot or parcel of land measured at the front setback line.

Property Frontage—Is the assigned and legal address of the property.

Yard, Front—An open unoccupied space on the same lot with the building between the front line of the building and the front line of the lot and extending the full width of the lot.

¶4      "To determine whether the [Appeal] Board's decision was erro[neous], we begin by considering the proper interpretation of the applicable ordinance. 'In interpreting the meaning of . . . [o]rdinance[s], we are guided by the standard rules of statutory construction.'" *Rogers v. West Valley City*, 2006 UT App 302, ¶ 15, 142 P.3d 554 (third and fourth alterations and omission in original) (quoting *Brown v. Sandy City Bd. of Adjustment*, 957 P.2d 207, 210 (Utah Ct. App. 1998)). "In interpreting the meaning of a statute or ordinance, we begin first by looking to the plain language of the ordinance. When examining the plain language, we must assume that each term included in the ordinance was used advisedly." *Carrier v. Salt Lake Cnty.*, 2004 UT 98, ¶ 30, 104 P.3d 1208 (citation and internal quotation marks omitted). "In conducting this plain meaning analysis, '[w]e read the plain language of the statute as a whole, and interpret its provisions in harmony with other statutes in the same chapter and related chapters.'" *Li v. Enterprise Rent-A-Car Co.*, 2006 UT 80, ¶ 9, 150 P.3d 471 (alteration in original) (quoting *Miller v. Weaver*, 2003 UT 12, ¶ 17, 66 P.3d 592); *see also Iverson v. State Farm Mut. Ins. Co.*, 2011 UT 34, ¶ 11, 256 P.3d 222 (stating the guidelines for statutory construction); *Thompson v. Logan City*, 2009 UT App 335, ¶¶ 16, 20, 22, 221 P.3d 907 (using this concept of statutory construction to interpret a city zoning ordinance). "Importantly, as with statutes, ordinance terms should be interpreted and applied according to their commonly accepted meaning unless the ordinary meaning of the term results in an application that is either unreasonably confused, inoperable, or in blatant contradiction of the express purpose of the [ordinance]." *M & S Cox Invs., LLC v. Provo City Corp.*, 2007 UT App 315, ¶ 31, 169 P.3d 789 (alteration in original) (internal quotation marks omitted).

¶5      Based on the plain language of the entire ordinance, we conclude that the Appeal Board correctly determined that Cahoon's front yard does not include portions of the street. The plain and ordinary meaning of "front yard" does not include a street or a road. *See, e.g., Dictionary.com*, http://dictionary.reference.com/browse/front+yard (last

visited March 23, 2012) (defining "front yard" as "the yard in front of a house; between the house and the street"); *Merriam-Webster Collegiate Dictionary*, 1450 (11th ed. 2003) *available at* http://www.merriam-webster.com/dictionary/yard (defining "yard" as "the grounds immediately surrounding a house that are usually covered with grass"). While portions of the ordinance read in isolation suggest some ambiguity about how to measure a front yard, the plain language of the entire ordinance clearly and unambiguously demonstrates that the ordinance does not contemplate the inclusion of the street in the front yard's measurement. Thus, the ordinance's plain language, specifically section 10-4-8, required Cahoon's lot to "have a front yard of not less than thirty (30) feet." Accordingly, we affirm the Appeal Board's determination that Cahoon was not entitled to a building permit because his fence did not comply with the ordinance.[2]

_____
Michele M. Christiansen, Judge

-----

¶6     WE CONCUR:

_____
J. Frederic Voros Jr.,
Associate Presiding Judge

_____
Stephen L. Roth, Judge

---

[2]Because of our determination and the lack of merit of Cahoon's other arguments, we do not address his additional arguments in any detail. *See State v. Carter*, 776 P.2d 886, 888 (Utah 1989) ("[An appellate court] need not analyze and address in writing each and every argument, issue, or claim raised and properly before [the court] on appeal. Rather, it is a maxim of appellate review that the nature and extent of an opinion rendered by an appellate court is largely discretionary with that court.").